The **CITY OF WILMINGTON,** By and
Through the **WATER DEPART-
MENT,** Plaintiff,

v.

**Edwin C. E. LORD, Jr., et al., Defendants.**

Superior Court of Delaware,
New Castle County.

May 28, 1975.

Frederick H. Altergott, Robert Goldberg, Wilmington, for plaintiff.

William Poole, Robert K. Payson, David A. Anderson, Potter, Anderson & Corroon, Wilmington, for certain defendants.

## OPINION

O'HARA, Judge.

This is a condemnation action brought by the City of Wilmington in an effort to acquire a site on the Greenhill Golf Course for the construction of a 500,000 gallon elevated water tank. The question before the Court is whether the City of Wilmington acting through its water department may, as a home rule city, condemn certain rights in parkland now held in trust. This Court has previously ruled that a municipality may not exercise the power of eminent domain over property already devoted to a public use unless the legislature has authorized the acquisition either expressly or by necessary implication. *City of Wilmington, Water Department v. Lord,* Del. Super., 332 A.2d 407 (1975). That decision was mandated by the need to construe strictly grants by the sovereign of the eminent domain power. In the course of that opinion, the Court raised several questions regarding the effect of Wilmington's home rule charter on its right to exercise eminent domain power. That issue has been briefed and is now decided by the Court.

Pursuant to the power granted by 22 Del.C. § 802, the City of Wilmington adopted a home rule charter which became effective July 1, 1965. Section 1–101 of the charter provides:

"the city shall have and exercise all express and implied powers and authority of local self-government and home rule, which, under the Delaware Constitution, it would be competent for the general assembly to grant the city by specific enumeration and which are not denied by general statute and the city shall have complete powers of legislation and administration in relation to municipal functions . . . . ."

As a result of this new distribution of power the City became a sovereign power as far as local self-government was concerned. *City of Youngstown v. Park and Recreation Com'n.,* 68 Ohio App. 104, 39 N.E.2d 214 (1939). The home rule charter accepts the grant of municipal sovereignty and like the state constitution is read as a limitation on the governmental unit's powers, not as a grant of specific powers. *West Coast Advertising Co. v. City and County, Etc.,* 14 Cal.2d 516, 95 P. 2d 138 (1939). Compare *Paul Scotton Con. Co., Inc. v. Mayor & Coun. of Dover,* Del.Ch., 301 A.2d 321 (1972, aff'd 314 A.2d 182 (1973). Thus, as a home rule city, Wilmington is to be considered the sovereign for the purposes of municipal functions. The General Assembly's authority to deny Wilmington powers through general statutes is not inconsistent with Wil-

mington's status as a sovereign any more than the federal legislature's power to restrain action by Delaware is inconsistent with the State's status as a sovereign.

■ As a sovereign Wilmington has the power to take public property by eminent domain for its own sovereign purposes. 1 Nichols on Eminent Domain, § 2.2. *Piekarski v. Smith,* 38 Del.Ch. 594, 153 A.2d 587 (1959) is not to the contrary. *Piekarski* involved the taking of public parkland by the State Highway Department. Although the Court noted the existence of an explicit statutory grant to the Highway Department authorizing it to condemn property already devoted to a public use it did not reach the question of whether the Department could take such property without specific legislative authorization. Moreover, the action there was by an agency of the sovereign rather than the sovereign itself.

■ As a sovereign Wilmington can condemn the public rights in its own parkland in order to construct the water tower. However, this condemnation action has been brought by and through the City's water department. The Court must decide whether the water department must have specific authority to condemn public parkland.

■ The case law relevant to this issue deals with an analogous problem, whether a state highway department needs specific authority in order to condemn public property. The cases are not in accord. They agree with the general rule that the sovereign may take public property for its own sovereign uses but that an agency of the sovereign to whom eminent domain has been delegated may only take public property if the legislature has manifested its consent to the taking of such property in express terms or by necessary implication. See e. g. *State v. Ouachita Parish School Board,* 242 La. 682, 138 So.2d 109, cert. denied 370 U.S. 916, 82 S.Ct. 1553, 8 L.Ed.2d 497 (1962); *State v. Hoester,* Mo.Supr., 362 S.W.2d 519 (1962). The difference in

the cases involves the application of the rule. Thus, *Ouachita* held that the state highway department, as an agency of the state to which eminent domain power has been delegated, could not condemn public property without specific authority. Conversely, *Hoester* held that because the highways built by the highway commission were provided for the use and benefit of all the state's citizens, the highway department was acting for the state in condemning the right of way and, therefore, the taking was by the sovereign. See also *Riley v. South Carolina State Highway Department,* 238 S.C. 19, 118 S.E.2d 809 (1961) where the highway department was found to be, in essence, the sovereign for the purposes of taking land devoted to a ·public purpose.

■ The Court recognizes the strong and important policy of honoring valid restrictions placed on land given the City. Before a governmental agency violates an agreement made by the City in accepting a gift of land, the people's representatives should express their approval. Because the City Council accepted the conditions on the gift, a subordinate agency of government such as the Water Department should not be allowed to renounce the condition without specific authority from the Council. The power to condemn public property belongs to the sovereign. Because the sovereign is not acting directly in this matter there should be a clear indication that the sovereign wants this power exercised to take public land in the instant case. For these reasons the Court finds the *Ouachita* holding more persuasive and elects to follow it. Thus, the Court holds that the Water Department must have specific authority to condemn the public parkland now held in trust.

■ Analogous to *Ouachita*, where the state's agency could condemn public property only if authorized by the state's legislature, the City's Water Department here can condemn the land only if it has legislative authority from its legislature, the City

Council. The Water Department may condemn a portion of the Greenhill Golf Course in order to construct a water tower if, but only if, an appropriate ordinance is passed. There is no need to amend the City's charter to give the Water Department this power just as there would be no need to amend the State Constitution to give a state department the right to condemn public property. By § 2–305 of the City charter the City Council may, by ordinance, add new powers, not inconsistent with the charter, to the City's departments.

 In addition to questioning the sufficiency of Wilmington's eminent domain power the defendants have raised several objections to this specific condemnation. The first is based on the City's acceptance of the Greenhill Golf Course as a gift to be held in trust. The defendants point out that a gift to a municipal corporation cannot, after acceptance by the municipality, be renounced or conveyed away. 17 McQuillen, Municipal Corporations, § 47–12; *Drury & others v. Inhabitants of Natick & another*, 92 Mass. 169 (1865). This rule is inapposite because the City is not renouncing the gift in the instant case since it intends to keep the property and merely change its use. The defendants also argue that the City's attempt to condemn the Greenhill land in this proceeding is an effort to disclaim in part the trust which it has accepted and that the acceptance of the land in trust for park purposes overrides the sovereign power of eminent domain. The Court rejects this argument because the sovereign power of eminent domain is paramount. While it is reasonable that the common law might operate to restrict the eminent domain power of an agency of the sovereign once that agency has accepted land in trust, *City of Wilmington, Water Department v. Lord,* supra, the law will not operate to divest the sovereign of its eminent domain power. Being founded on the law of necessity, the power of eminent domain is inherent in sovereignty. *Riley v. South Carolina State*

*Highway Department,* supra. Where a city has the right to condemn public property this right will not be defeated by the fact that the right is being exercised to facilitate the violation of restrictive covenants in a deed. *Bolton v. City of Waco,* Tex.Civ.App., 447 S.W.2d 718 (1969) (application for writ of error refused, no reversible error).

In any event, the City is not disclaiming the trust. It is merely exercising a power subject to which the trust was taken. At the time of its acceptance the City was not the sovereign but nevertheless held the right to accept sovereignty from the State and become the sovereign. It thus had the power to accept and exercise the sovereign power of eminent domain in the future. That is what the City would do in the instant case.

 The defendants also argue that this action should be dismissed because the Court of Chancery has issued a permanent injunction against the City barring it "from taking any action or steps to close, implement, complete or consumate any transaction in connection with or related to the construction of a 500,000 gallon capacity elevated steel water tank" on the Greenhill Golf Course. They argue that this condemnation action is a way of avoiding the injunction and is, therefore, a breach of Chancery's mandate. Because the Vice Chancellor refrained from enjoining the City's maintenance of this condemnation action during the pendency of a preliminary injunction identical to the permanent injunction this argument is unpersuasive. Moreover, it is made to the wrong Court. In effect, the defendants are arguing that the City is in contempt of Chancery's order for maintaining this action. That argument should be presented, if at all, to Court of Chancery.

 The defendants also assert that the permanent injunction has rendered this condemnation action moot. This is incorrect because the City's sovereign power of

eminent domain overrides any obligation it might have under the trust. This Court has no jurisdiction over the trust. However, it has jurisdiction of the condemnation action and has concluded that the City may condemn the land in question.

The Water Department may, if there is a specific ordinance granting it the authority, condemn the parkland in order to terminate the public rights in the parkland and erect the water tower.

An appropriate order may be entered on notice.