Frank L. SCHADT, III and Margaret Schadt, Defendants Below, Appellants,

v.

Jane E. LATCHFORD, Plaintiff Below, Appellee.

No. 232, 2002.

Supreme Court of Delaware.

Submitted: Nov. 4, 2003.

Decided: Feb. 6, 2004.

Reargument Denied March 2, 2004.

Robert K. Pearce (argued), Ferry, Joseph & Pearce, P.A., Wilmington; William L. Doerler, White & Williams, Wilmington, for appellants.

Eric L. Grayson, Robinson & Grayson, Wilmington; Stephen F. Dryden (argued), Berkowitz, Schagrin, Cooper & Dryden, Wilmington, for appellee.

Rosamaria Tassone (argued), Assistant City Solicitor, City of Wilmington Law Department, Wilmington, for City of Wilmington.

Before VEASEY, Chief Justice, HOLLAND, BERGER, STEELE and JACOBS, Justices, constituting the court en banc.

STEELE, Justice:

The City of Wilmington enacted an ordinance that imposed upon private landowners holding property adjacent to the City's public sidewalks a duty to repair and maintain abutting public sidewalks. The ordinance imposes sole responsibility for damages for a breach of that duty upon the private landowner. Plaintiff/Appellee successfully contended below that Defendants/Appellants property owners negligently breached their duty to keep the City owned sidewalks safe for pedestrians. A jury awarded her compensation for her personal injuries resulting from that breach. Defendants/Appellants property owners unsuccessfully challenged Wilmington City Council's authority to enact the ordinance in Superior Court.

We conclude that because the Wilmington City Charter expressly mandates that the City of Wilmington repair and maintain City owned sidewalks adjacent to private property, the ordinance purporting to transfer that duty to private property owners is inconsistent with the express terms of the City Charter. We therefore find that the ordinance may not place a duty upon private property owners to maintain and repair City owned sidewalks for the safety of the general public. The Superior Court's conclusion that the ordinance properly transferred the duty to adjacent private property owners is incorrect and must be reversed.

# I

## Facts

On September 25 1997, Jane Latchford and two co-workers took a "power walk" during their lunch hour. They often maintained a brisk pace and talked with each other as they walked. Latchford, who was walking a few steps ahead of her co-workers, noticed a difference in height between two sections of a City-owned sidewalk and attempted to step over it. She cleared the leading raised edge of the sidewalk with her left foot, but her right foot caught the top of the raised portion of the sidewalk. She tripped and fell, fracturing her left hip. The injury required multiple surgeries.

Frank and Margaret Schadt owned the property abutting the sidewalk upon which Latchford fell. The Schadts acknowledged the sidewalk's imperfect condition. There was a crack in one sidewalk section and two other adjoining sections had a height difference between them of 1½ to 1¾ inches.

Latchford filed suit against the Schadts in the Superior Court seeking damages. Specifically, Latchford argued that the Schadts failed to maintain properly the sidewalk abutting their property as 1 *Wilm. C.* § 42–42 required them to do. Before trial, the Schadts moved for summary judgment on the issue of the constitutionality of 1 *Wilm. C.* § 42–42. The trial judge denied the motion and held as a matter of law that through § 42–42 the City Council of Wilmington had validly transferred the City's responsibility to maintain and repair public sidewalks to adjacent private property owners.[1] The Schadts moved for reargument or clarification of the trial judge's order denying their motion for summary judgment. The trial judge granted the motion in order to more fully address the Schadts' attack on the constitutionality of § 42–42. In an April 2001 Order the trial judge held that the

1. *Latchford v. Schadt,* 2001 Del.Super. Lexis 136, (May 31, 2000) (ORDER).

ordinance did not divest the City of the duty to repair and maintain sidewalks, but simply delegated that duty to property owners pursuant to a valid exercise of municipal home rule powers.[2] The case went to trial and a jury awarded Latchford $230,000.

■ We review questions of law *de novo* to determine if the trial judge erred.[3]

## II

### The City of Wilmington's Home Rule Charter

■ The City's current home rule Charter, adopted by referendum on November 7, 1978 and effective on July 1, 1979, grants complete legislative and administrative power over municipal functions to the City of Wilmington.[4] The grant includes the power to enact ordinances necessary and proper for executing any of the City's express or implied powers.[5] "The purpose of the home rule provisions was to enable municipalities to exercise the powers of the sovereign except as limited by either the State Constitution or State statute."[6] Accordingly, a limit to Wilmington's sovereignty is explicit in § 802:

> Every municipal corporation in this State ... may, subject to the conditions and limitations imposed by this chapter, amend its charter so as to have and assume all powers which, under the Constitution of this State, it would be competent for the General Assembly to grant by specific enumeration and which are not denied by statute .... [7]

Thus, the City enjoys complete powers of legislation and administration relating to its municipal functions,[8] but only within the scope of the powers conferred by the General Assembly through the City's Charter.[9] Accordingly, Wilmington's Charter "stands as its constitution," [10] and amendments to that charter are subject to the procedures required by 22 *Del. C.* §§ 811–815. Specifically, charter amendments must be enacted by referendum or by an act of the General Assembly with approval of two-thirds of all members of each house.[11] In other words, ordinances enacted by the City Council:

2. *Latchford v. Schadt,* 2001 Del.Super. Lexis 136, (April 20, 2001) (ORDER).

3. *Smithkline Beecham Pharmaceuticals Co. v. Merck & Co., Inc.,* 766 A.2d 442, 447 (Del. 2000).

4. 22 *Del. C.* ch. 8 (1961); *Gage v. City of Wilmington,* 293 A.2d 555, 557 (Del.1972).

5. 1 *Wilm. C.* § 1–101.

6. *NAACP v. Wilmington Med. Ctr.,* 426 F.Supp. 919, 927 (D.Del.1977).

7. 22 *Del. C.* § 802 (1961).

8. *Gage,* 293 A.2d at 557 (citing 1 *Wilm. C.* § 1–101).

9. *Carl M. Freeman Associates, Inc. v. Green,* 447 A.2d 1179, 1181–82 (Del.1982) (explaining that a County Council cannot disregard procedural safeguards and must act within the scope of its grant of power from the General Assembly).

10. *Bivens v. City of Grand Rapids,* 443 Mich. 391, 505 N.W.2d 239, 243 ("The charter of a city stands as its "constitution" " *Streat v. Vermilya,* 268 Mich. 1, 255 N.W. 604 (1934), citing *Paulsen v. Portland,* 149 U.S. 30, 13 S.Ct. 750, 37 L.Ed. 637 (1893); "it is "the definition of [a city's] rights and obligations as a municipal entity, so far as they are not otherwise legally granted or imposed." " *Jackson Common Council v. Harrington,* 160 Mich. 550, 125 N.W. 383 (1910); see also *Sykes v. Battle Creek,* 288 Mich. 660, 286 N.W. 117 (1939)).

11. 22 *Del. C.* §§ 811–815. Section 811 states in part: ... The commission shall have authority to propose the amendment of the char-

...must conform to, be subordinate to, not conflict with, and not exceed the charter, and can no more change or limit the effect of the charter than a legislative act can modify or supersede a provision of the constitution of the state.[12]

## III

### *1 Wilm. C. §§ 5–400 and 42–42*

1 *Wilm. C.* § 5–400 (the Wilmington City Charter) states, in relevant part:

The department of public works shall have the power and its duty shall be to perform the following functions:

(a) **City streets, etc., generally.** *It shall itself, or by contract,* design, construct, repair and maintain city streets, which shall include highways ... footways ... [13]

1 *Wilm. C.* § 42–42 (the challenged ordinance) reads:

(a) Every sidewalk or footway between the curb stone and the building line, and every curb, along any of the public streets in the city, *in front of lots whereon is erected any dwelling house,* office, place of business, railing, fence, stone or brick wall, or permanent structure of any kind, or in front of such vacant lots as shall have been paved, *shall at all times be kept in proper condition and free from obstruction and defective conditions.* Any side-walk, footway or curb, which shall become uneven or in which there shall be holes caused by the wear or removal of the material of which it is composed or in which there shall be depressions or in which there shall be

loose bricks or loose material or which shall become broken or thrown into ridges or forced out of normal position by trees, tree roots, frost or other means; or which shall be unfit for use as a footway or sidewalk or curb by reason of being covered with weeds, mud, dirt, filth or other objectionable matter or which shall be out of proper condition from any cause, natural or artificial, shall be deemed to be a nuisance.

(b) *The owner of any property or ground abutting on such defective sidewalk or footway, or curb, or the authorized agent of such owner, shall be solely responsible for any damage that may result to persons or property* by reason of any hole, excavation or obstruction in or upon such footways, or from any defective condition of such sidewalk, footway or curb.[14]

## IV

### *Analysis*

■ Latchford insists that § 42–42 operates only to require that the financial responsibility for sidewalk maintenance be shared between the City and private property owners. Latchford maintains that this shared duty neither conflicts with § 5–400 nor usurps the power of the Wilmington voter. The City of Wilmington, as *amicus,* contends that § 42–42 is not inconsistent with § 5–400 because § 42–42 is no more than an exercise of implied municipal power to determine the best and most efficient scheme to repair and maintain sidewalks. For this reason, the City in-

---

ter as specified in the petition, to hold public hearings thereon and to arrange for putting the proposed amendment on the ballot or voting machine to be used at the next referendum election... In addition to the procedure hereinbefore set forth, a charter may be amended by act of the General Assembly, passed with the concurrence of two thirds of

all the members elected to each House thereof.

**12.** 5 McQuillin, *Municipal Corporations* § 15.19, p. 98 (3d ed.).

**13.** 1 *Wilm. C.* § 5–400 (emphasis added).

**14.** 1 *Wilm. C.* § 42–42 (emphasis added).

sists, it has not improperly delegated its duty to property owners. We find no merit in these assertions.

Reading the two provisions *in pari materia*, we find that § 5–400 clearly and unequivocally mandates that the City *itself, or by contract* repair and maintain, among other things, public sidewalks. Further, we cannot reasonably conclude that the later-enacted § 42–42, which transfers to the adjacent property owner both the duty to repair and maintain and the *sole responsibility* for damages resulting from the failure to repair or maintain public sidewalks is consistent with § 5–400.

The issue presented here is one of first impression. We find support for our conclusion in *Bivens v. City of Grand Rapids*,[15] a case that is both logically and factually apposite. Tara Bivens sued the City of Grand Rapids after she fell off of her bicycle on a poorly maintained city sidewalk abutting a country club's property.[16] The Grand Rapids City Charter provided that property owners had a duty to maintain sidewalks abutting their property. The charter also required the City to notify property owners when a sidewalk needed repair and imposed a public duty of care upon abutting owners after proper notice from the City. If the owner failed to heed the notice, the City could repair the sidewalk and place a lien on the abutting property for the cost of the repair.[17] The City later enacted an ordinance that required property owners to indemnify the City for all damages resulting from a failure to maintain and repair the sidewalks

abutting their property.[18] The Supreme Court of Michigan held that the ordinance impermissibly expanded the scope of the landowners' liability:

> The ordinance not only eliminates the triggering requirement of notice, but it purports to establish a new and different method of enforcement that would expose abutting landowners to unlimited civil liability. Nothing in the charter provision relied upon by the city contemplates the imposition of such a private duty running to all individual users of a sidewalk or the imposition of an obligation to indemnify the city for all damages that it might be required to pay to those injured on the sidewalk. Surely, it could not be seriously contended that the Grand Rapids voters intended to assume such unlimited liability when they voted in 1918 to approve this charter provision.[19]

The *Bivens* court concluded that "[t]o permit ... a city commission to enact an ordinance contrary to the charter[ ] would enable the commission to effectively amend the charter without subjecting the amendment to the scrutiny and approval of the local electorate."[20] *Bivens* stands for the proposition that a city may not validly enact an ordinance that contradicts limitations expressly provided in its charter.[21]

■ Delaware, like Michigan, is strongly committed to the principles of home rule. We acknowledge that a grant of municipal sovereignty necessarily assigns wide latitude to make important municipal decisions. The City's home rule Charter, like our state Constitution, is read, howev-

---

15. 443 Mich. 391, 505 N.W.2d 239 (1993).

16. *Bivens*, 505 N.W.2d at 240.

17. *Id.* at 241.

18. *Id.*

19. *Id.* at 243–44.

20. *Bivens*, 505 N.W.2d at 243. (citing *Thiesen v. Dearborn City Council*, 320 Mich. 446, 31 N.W.2d 806 (1948)).

21. *Id.* at 243.

er, as a limitation on governmental power, and not as a grant of specific powers.[22]

Section 5–400 limits the City's ability to delegate the duty to repair and maintain sidewalks to anyone other than by contract. In light of this limitation, we find § 42–42 inconsistent with that express duty, because it attempts to transfer both the obligation to repair and maintain the public sidewalks as well as the sole liability for damages resulting from breach of that duty, to private landowners holding property abutting the public sidewalks without a charter amendment approved by the City's voters. Section 42–42 of the Wilmington City Code "represents a wide and inconsistent departure"[23] from the home rule Charter approved by a 1979 referendum of Wilmington voters. We, of course, are in no position to comment on the merits or efficacy of a decision to transfer

responsibility to exercise a municipal function from the City to private property owners. We can only conclude that the decision to do so must be made by Wilmington voters or the General Assembly in the form of a properly enacted Charter change and not by ordinance of the Wilmington City Council.

The decision of the Superior Court denying the Schadt's Motion for Summary Judgment is hereby reversed. We remand and direct that summary judgment be entered in favor of the Schadts.

---

**22.** *City of Wilmington v. Lord,* 340 A.2d 182, 183 (Del.Super.1975) (citing *West Coast Advertising Co. v. City and County, Etc.,* 14 Cal.2d 516, 95 P.2d 138 (1939) "It is now established by a line of decisions of the courts of this state that a city which has availed itself of the provisions of the Constitution as amended in 1914 has full control over its municipal affairs unaffected by general laws on the same subject-matters, and that it has such control whether or not its charter specif-ically provides for the particular power sought to be exercised, so long as the power is exercised within the limitations or restrictions placed in the charter." *See also Stege v. City of Richmond,* 194 Cal. 305[, 228 Pac. 461]; *Brougher v. Board of Public Works,* 205 Cal. 426[, 271 Pac. 487]; *Butterworth v. Boyd,* 12 Cal.2d 140[, 82 Pac.(2d) 434]).

**23.** *Bivens,* 505 N.W.2d at 243.