Roger WILHELM, Jr., Plaintiff Below, Appellant,

v.

Catherine RYAN and Mary K. Ryan, Defendant Below, Appellees.

No. 175, 2005.

Supreme Court of Delaware.

Submitted: June 14, 2006.
Decided: July 18, 2006.

Joseph M. Jachetti, Kenneth R. Schuster & Associates, P.C., Wilmington, Delaware, for appellant.

Edward F. Kafader, Wilmington, Delaware, for appellees.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

STEELE, Chief Justice.

Catherine Ryan, the defendant appellee, operated her vehicle while under the influence of alcohol. She disobeyed a traffic signal and collided with Cameron Logan's vehicle. Logan's vehicle then spun out of control and struck Robert Wilhelm's vehicle. Logan later died from injuries suffered in the accident. Ryan pleaded guilty to vehicular homicide as a result of causing Logan's death.

Wilhelm brought a civil suit against Ryan claiming negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. Wilhelm sought compensatory and punitive dam- ages for his claims. Before trial, Ryan sent Wilhelm an offer of judgment for $25,000. Wilhelm rejected the offer and the case went to a trial before a jury. The jury returned a verdict in Wilhelm's favor and awarded him $4,108 in compensatory damages. As the prevailing party, Wilhelm filed a motion for costs under Superior Court Civil Rule 54(d). The trial judge granted Wilhelm's motion for his costs incurred before the offer of judgment, but denied his motion for his costs incurred after the offer of judgment. Moreover, the trial judge granted Ryan her costs incurred after the offer of judgment under Superior Court Civil Rule 68.

On appeal Wilhelm raises three claims of error: (1) the trial judge erred by denying his motion *in limine* to exclude Ryan's testimony about her criminal conviction and remorse for her actions; (2) the trial judge erred by denying his motion for a new trial or additur; and (3) the trial judge erred by failing to grant him the costs he incurred after Ryan's offer of judgment. Because the trial judge acted within his discretion and committed no legal error, we affirm.

## I. Facts

On May 6, 2001, Ryan operated her motor vehicle on Route 202 in New Castle County while she was under the influence of alcohol. Ryan, who drove at approximately 80 mph, disobeyed a traffic signal and collided with Logan's vehicle. Logan's vehicle then spun out of control and struck Wilhelm's vehicle. After the collision, Wilhelm got out of his vehicle and attempted to help Logan and Ryan. Wilhelm approached Logan's vehicle and observed Logan bleeding from his eyes, mouth, nose and ears. Wilhelm then attempted to assist Logan with his injuries.[1] Logan died shortly after the accident, and Wilhelm witnessed Logan's death.

---

1. We recognize that the extent to which Wil- helm assisted Logan, if at all, was in dispute

Because of the accident, Wilhelm developed pain in his neck and back.[2] Wilhelm visited his primary physician on May 8, 2001 to discuss his physical injuries and the shock of witnessing Logan's death. Wilhelm also had an MRI scan. This 2001 MRI scan, according to Ryan's medical expert, revealed substantially the same condition that a 1998 MRI scan had indicated.[3] Wilhelm visited his physician two more times in the summer of 2001.[4] Wilhelm did not visit his physician again until January of 2003 when he again complained of severe neck pain. Wilhelm's physician then ordered him to undergo another MRI scan. This 2003 MRI scan revealed a major disc herniation that the earlier MRIs did not reveal.[5] On August 25, 2003, two years after his accident with Ryan, Wilhelm had surgery to repair two herniated discs in his back.[6]

Wilhelm filed a lawsuit against Ryan for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress and punitive damages. In addition to pain and suffering, Wilhelm claimed that he sustained wage loss and medical bills of $72,000 directly resulting from Ryan's negligence.

The case went to trial before a jury. Ryan conceded liability and contested damages. A Superior Court jury returned a verdict granting Wilhelm $4,108 in compensatory damages and no punitive damages.[7] After the trial, the trial judge awarded Wilhelm, as the "prevailing party," his costs incurred before the offer of judgment, but required Wilhelm to pay both his and Ryan's costs incurred after the offer of judgment because Ryan's timely $25,000 offer of judgment exceeded the jury's award.

## II. Wilhelm's claims on appeal

### A. *Wilhelm's claim that the trial judge erred by denying his motion in limine to exclude Ryan's testimony about her criminal conviction and remorse over Logan's death.*

Before trial, Wilhelm filed a motion *in limine* to exclude Ryan's testimony about Ryan's criminal conviction, remorse for her

at trial. Wilhelm claimed that he pinched Logan's nose because he was "concerned about the amount of blood coming out of his nose." Moreover, Wilhelm testified that the police did not arrive until five to ten minutes after the collision.

Officer Fyock, a New Castle County Police Officer, testified that he was driving on Route 202 at the time of the accident and arrived on the scene ten or fifteen *seconds* after the collision. He claimed that he saw a white male attempting to open the driver's side door of Logan's vehicle and he instructed him to stop for safety reasons. Fyock then entered Logan's vehicle through the back window or passenger side door and gave medical assistance to Logan until a paramedic unit arrived a few minutes later.

2. Wilhelm also had neck and back problems from two previous car accidents. Wilhelm was involved in car accidents in 1990 and 1998. After the 1998 accident, Wilhelm's physicians recommended that he undergo "a

two level surgical procedure, anterior cervical fusion at C5–6, C6–C7."

3. Ryan's expert medical witness testified that there "really [was] not much change" from the 1998 MRI to the 2001 MRI.

4. In addition to Wilhlem's May 8, 2001 visit, he also saw his physicians on May 25, 2001, and in August of 2001.

5. Ryan's medical expert testified that the 2003 MRI scan revealed "a major disc herniation now at C6–C7 that wasn't present before."

6. Wilhelm had the same surgery that his physicians recommended he undergo in 1998. *See supra* n. 2.

7. The award was a general award of compensatory damages. The Civil Trial Activity Sheet stated "$4,108 awarded to plaintiff for compensation for injuries sustained as a result of the accident on May 6, 2001."

actions, and planned reconciliation with Logan's mother.[8] The trial judge denied Wilhelm's motion.

■ Wilhelm now claims that the trial judge abused his discretion by failing to grant his motion *in limine* to exclude Ryan's testimony because Ryan's testimony about her criminal conviction (both the crime to which she pleaded guilty and the sentence she received) was not admissible under Delaware common law. Wilhelm also argues that Ryan's testimony, if admissible under Delaware common law, was irrelevant or, if relevant, was unfairly prejudicial. Ryan counters by asserting that the trial judge did not abuse his discretion by admitting her testimony about her criminal punishment because the testimony was relevant and highly probative to mitigate Wilhlem's claim for punitive damages. Therefore, the primary issue with respect to this contention is whether Delaware's law allows a defendant's earlier criminal conviction to be admitted to mitigate a plaintiff's civil claim for punitive damages when the plaintiff's civil claim for punitive damages arises from the same actions for which the defendant received a criminal sentence. Whether Delaware permits a party to introduce evidence of a criminal conviction to mitigate a civil claim for punitive damages is a question of law. We review questions of law *de novo*.[9]

■ In his opening brief, Wilhelm relied on *Armstrong v. Rhoades*[10] and *Keller v. Taylor*[11] to suggest that Delaware's common law prohibited the admission of Ryan's testimony to mitigate punitive damages.[12] Putting aside the fact that these cases are over 100 years old, Wilhelm's reliance is misplaced. Neither *Armstrong* nor *Keller* involved a claim for punitive damages; in both cases the Superior Court merely held that evidence of a criminal conviction could not be admitted to mitigate *compensatory* damages.

We would not be able to conclude that the trial judge legally erred by failing to follow either *Armstrong* or *Keller*. Ryan's counsel, following his ethical duty to cite all relevant cases, however, brought *Jefferson v. Adams*[13] to our attention in his answering brief.[14] We discuss *Jefferson* to remove any confusion about whether a defendant's earlier criminal conviction is admissible to mitigate a plaintiff's civil claim for punitive damages.

■ In *Jefferson*, the plaintiff brought a civil lawsuit against the defendant for compensatory *and* punitive damages because the defendant forcibly entered the plaintiff's home and violently assaulted him. By the time of trial in the plaintiff's civil case, the defendant had been convicted

8. Ryan testified that she planned to meet with Logan's mother to express her remorse.

9. *Schadt v. Latchford*, 843 A.2d 689, 691 (Del. 2004).

10. 20 Del. 151, 53 A. 435 (Del.Super.Ct.1902).

11. 7 Del. 20 (Del.Super.Ct.1858).

12. *Armstrong* and *Keller* are the only cases cited by Wilhelm in his opening brief for his claim that Ryan's testimony was inadmissible to mitigate punitive damages under Delaware common law.

13. 4 Del. 321 (Del.Super.Ct.1845).

14. Based on Wilhelm's counsel's opening brief, it appears that his research did not produce *Jefferson*. We commend Ryan's counsel for citing *Jefferson* despite the fact that it is contrary to his position. Del. Prof. Cond. R. 3.3(a)(2)(2006) ("A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel."). Ryan's counsel's action conforms with the highest traditions of the Delaware Bar and is an example of the reason why Delaware remains a favorable environment for the practice of law.

and sentenced for a criminal offense. The defendant contended that his criminal conviction and substantial fine barred the plaintiff's claim for punitive damages, or in the alternative, were proper evidence admissible to mitigate punitive damages. The trial judge determined that the plaintiff's claim for punitive damages was not barred and that the defendant's criminal conviction was not admissible to mitigate punitive damages:

> It was for the jury to say whether there were circumstances of aggravation in this case, which ought in their judgment, to require a departure from the general rule of compensatory damages; and which called on them to add any thing by way of public example or punishment. As to the proceedings in the criminal court, they were not evidence, and could not have been given in evidence in this case, and were not to enter into the consideration of the jury in deciding it either as to the propriety of a verdict against the defendants, *or for the amount of the damages.* The indictment was between other parties; the State and these defendants, and not this plaintiff and the defendants; the verdict was rendered upon other testimony than that given in this case; even upon the testimony of the plaintiff himself and his

wife; and the punishment, if any such has been inflicted, had reference to the public peace and not to this plaintiff's wrongs. It would obviously, therefore, be improper that these proceedings in the criminal court should enter into the present case for any purpose.[15]

*Jefferson* suggests that evidence of a defendant's criminal conviction should not be admissible where a plaintiff brings a civil claim for punitive damages out of the same set of facts because criminal punishment and punitive damages serve two separate purposes. In other words, criminal punishment provides retribution for the public while punitive damages provide retribution for the plaintiff. We can endorse *Jefferson* for the proposition that a defendant's earlier criminal conviction does not bar a plaintiff's civil claim for punitive damages on Double Jeopardy grounds,[16] but we cannot follow *Jefferson*'s apparent holding that a defendant's criminal conviction is not relevant to mitigate an award of punitive damages.[17] In other words, we think the preferable rule is that a defendant's criminal conviction will not prohibit a plaintiff's civil claim for punitive damages, but the defendant will be permitted to admit evidence of her criminal conviction to mitigate any award of punitive damages.[18] One recent case discussing puni-

15. *Jefferson,* 4 Del. 321, 323.

16. For a discussion on *Jefferson*'s holding that the Double Jeopardy clause would not bar a plaintiff's claim for punitive damages when the defendant was punished criminally for the same action *see Hetrick v. Locklear,* 1991 Del.Super. LEXIS 15, at *7–8 (Del.Super.Ct. Jan. 29, 1991)("Having concluded that punitive damages address a civil wrong, unrelated to any fines that were or could have been imposed in connection with the criminal action, I conclude that double jeopardy has no application as there is no attempt here to punish criminally a second time for the same offense.").

17. At oral argument, Wilhelm's counsel expressed confusion about the history of the Delaware Supreme Court and whether *Jefferson* is binding authority. Jefferson was decided in 1845. Before 1951 we were without a separate Supreme Court. The highest appellate authority during that time consisted of a panel of judges from trial courts. *Jefferson* is not an appellate level case and neither binds us nor requires us to overrule its holding. *See* JUSTICE RANDY J. HOLLAND & HELEN L. WINSLOW, DELAWARE SUPREME COURT GOLDEN ANNIVERSARY 1–15 (2001).

18. Other jurisdictions follow this approach. *Puz v. McDonald,* 140 Ariz. 77, 78–79, 680 P.2d 213 (1984); *Crider v. Appelt,* 696 S.W.2d

tive damages is consistent with this rule. In *Jardel Company, Inc. v. Hughes*,[19] we stated:

> A majority of jurisdictions now accept that punitive damages serve a dual purpose—to punish wrongdoers and deter others from similar conduct. This dual purpose is reflected in § 908 of the Restatement (Second) of Torts (1979), which provides in part: "Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."

The punishment/deterrence rationale underlying punitive damages has caused them to be characterized as *civil penalties which serve as a substitute for criminal prosecution for conduct which, though criminal, often goes unpunished by the public prosecutor*.[20] While this language does not squarely address the question of whether a defendant should be permitted to admit evidence of his criminal conviction to mitigate a civil claim for punitive damages, it clearly implies that the admission of the criminal conviction would be the only logical result. Because our case law recognizes that punitive damages can be awarded both to punish the defendant and to deter others for similar conduct, and because punitive damages traditionally served as civil penalties to substitute for criminal prosecution, it logically follows that the jury should be permitted to consider the amount of punishment the defendant has already received in the criminal action against her in order to determine whether to award punitive damages. In other words, because punitive damages and criminal prosecution serve the same purpose (to punish the defendant), the jury should have the opportunity to consider the defendant's criminal punishment (crime and sentence) when assessing punitive damages. Therefore, because the trial judge acted in conformity with Delaware law, we find that he did not abuse his discretion by admitting Ryan's criminal conviction for vehicular homicide to mitigate Wilhelm's claim for punitive damages.

Wilhelm also argues that the trial judge abused his discretion by admitting Ryan's testimony about her conviction, remorse for her actions, and her plan of reconciliation with Logan's mother because the testimony was irrelevant, or in the alternative, unfairly prejudicial. Rulings on whether evidence is irrelevant or unfairly prejudicial are matters within the discretion of the trial judge that we will reverse only upon a showing of an abuse of discretion.[21]

---

55, 57 (Tex.Ct.App.1985)("[W]e note that evidence of criminal convictions and penalties is admissible in punitive damages cases to mitigate, but not to bar, the award of punitive damages."); *Cheevers v. Clark*, 214 Ga.App. 866, 869, 449 S.E.2d 528 (Ga.Ct.App.1994) ("Georgia among those states which permit the use of criminal punishments to mitigate civil punitive damages arising from the same act."); *Anderson v. Amundson*, 354 N.W.2d 895, 900 (Minn.Ct.App.1984)("Evidence of criminal penalty incurred as a result of driving while intoxicated is relevant in a subsequent civil suit for punitive damages and should be considered by the jury in assessing those damages."); *see also* Annotation, As-

sault: Criminal Liability as Barring or Mitigating Recovery of Punitive Damages, 98 A.L.R.3d 870 (1980)(updated Dec. 1994).

**19.** 523 A.2d 518 (Del.1987).

**20.** *Id.* at 529.

**21.** *Mercedes–Benz of North America, Inc. v. Norman Gershman's Things to Wear, Inc.*, 596 A.2d 1358, 1366 (Del.1991) ("Determination of relevancy under D.R.E. 401 and unfair prejudice under D.R.E. 403 are matters within the sound discretion of the trial court, and will not be reversed in the absence of clear abuse of discretion.").

■ Here, we cannot find that the trial judge abused his discretion. As discussed above, one purpose of punitive damages is to punish the defendant. Certainly Ryan's conviction, remorse, and her intended reconciliation with Logan's mother were relevant to mitigate any need to punish Ryan financially. Likewise, we cannot find that the trial judge abused his discretion by determining that the probative value of Ryan's testimony was not substantially outweighed by the danger of unfair prejudice.[22] The mitigating value of Ryan's testimony, an acknowledgement of the impact of her actions on herself, outweighed any danger that the jury would feel sympathy for Ryan, a convicted felon, and allow that sympathy to affect its award of compensatory damages. Moreover, assuming that any jury could be sympathetic to a felon convicted of killing someone as a result of drunk driving, the trial judge prevented any danger that the jury would allow that sympathy to enter into their verdict when he instructed the jury before deliberations. At the beginning of his instruction the trial judge stated:

> You have been chosen and sworn as jurors to decide issues of fact. You must perform these duties without bias for or against the parties. **The law does not allow you to be influenced by sympathy,** prejudice, or public opinion
> . . .

Near the end of the jury instruction, the trial judge reiterated what he said earlier:

> Ladies and gentlemen, your verdict must be based solely on the evidence in the case. **You must not be governed by prejudice, sympathy, or any other motive except a fair and impartial** consideration of the evidence. **You must not, under any circumstances, allow any sympathy that you might have for any of the parties to influence you in any way in arriving at your verdict.** I am not telling you not to sympathize with the parties. It is only natural and human to sympathize with the persons involved in litigation. **You must not allow that sympathy to enter into your consideration of the case or to influence your verdict.**

We presume that the jury followed these instructions.[23]

## B. *Wilhelm's claim that the trial judge erred by failing to grant additur or a new trial.*

■ After the jury's verdict, Wilhelm filed a motion for a new trial for damages or, alternatively, additur. Wilhelm claimed that the jury's award was so grossly disproportionate that it should have shocked the trial judge's conscience. In support of his claim that the jury's award was grossly inadequate, Wilhelm cited to the fact that liability was not in dispute and the uncontested evidence that he incurred lost wages and medical expenses of $72,000. Ryan countered claiming that there was substantial evidence supporting the jury's verdict; namely, evidence suggesting that Wilhelm's back injuries and the expenses allegedly related to them did not result from Ryan's admitted negligence. The trial judge denied Wilhelm's motion for a new trial and additur. Wilhelm now claims that the trial judge erred by denying his motion.

■ We review a trial judge's denial of a motion for additur for an abuse of discretion.[24] We have recently discussed the

---

22. *See* D.R.E. 403.

23. *Capano v. State*, 781 A.2d 556, 589 (Del. 2001)("As a general rule, we must presume that 'the jurors followed the court's instruction.'")(quoting *Shelton v. State*, 744 A.2d 465, 483 (2000)).

24. *Young v. Frase*, 702 A.2d 1234, 1236 (1997)("We review for abuse of discretion a decision by a trial court denying a motion for additur or a new trial.")(citing *Cloroben Chemical Corp. v. Comegys*, 464 A.2d 887, 893 (1983)).

standard for granting additur. In *Young v. Frase,* we stated:

> Under Delaware law, enormous deference is given to jury verdicts. In the face of any reasonable difference of opinion, courts will yield to the jury's decision. It follows that, in the absence of exceptional circumstances, the validity of damages determined by the jury should likewise be presumed. ***Accordingly, a jury award should be set aside only in the unusual case where it is clear that the award is so grossly out of proportion to the injuries suffered as to shock the Court's conscience and sense of justice.***
>
> A jury award will meet this standard when it is so inadequate that it must have been based on passion, prejudice or misconduct rather than on an objective consideration of the trial evidence. ***Therefore, as a practical test, a court presented with a request for additur must review the record and determine whether the jury's award of damages is within a range supported by the evidence. As long as there is a sufficient evidentiary basis for the amount of the award, the jury's verdict should not be disturbed by a grant of additur or a new trial as to damages.*** This Court will not substitute its judgment for that of the trial court in determining issues of granting additur or a new trial.[25]

Here, Wilhelm presented evidence that he suffered $72,000 in medical expenses and wages. Most of these expenses and losses arose from Wilhelm's back surgery in 2003. Wilhelm claimed that he required back surgery as a result of his accident with Ryan. As the trial judge stated when denying the motion for a new trial or additur, the jury obviously did not find that Ryan's negligence caused the need for Wilhelm's back surgery.

The jury certainly could have found that Wilhlem's back surgery (and the corresponding $72,000 in damages) were not related to his accident with Ryan based on the fact that Wilhelm was involved in two previous car accidents in 1990 and 1998, and after those accidents, was told by his physicians that he needed surgery.[26] Even if that alone were not enough, the jury also could have found that Wilhelm's back injury and surgery bore no relationship to his accident with Ryan because Wilhelm did not have back surgery until after a February 2003 MRI revealed a worse condition that, according to Ryan's medical expert, was not medically related to any injury Wilhelm received in the accident of May 6, 2001. Ryan's medical ex-

---

25. *Id.* at 1236–37.

26. Wilhelm seems to also suggest that because the trial judge instructed the jury that the defendant was injured as a matter of law and that the jury "must award the plaintiff damages," it should have shocked the court's conscious that he only received $4,108 when he submitted $72,000 in lost wages and medical expenses. The trial judge instructed:

> Ladies and gentlemen, I instruct you as a matter of law that since the defendant has admitted she was responsible for causing the collision that took place on May 6, 2001, and that the plaintiff suffered some injury as a result, *you must award the plaintiff damages.* You must, therefore, consider the compensation to which the plaintiff is entitled. *However, a plaintiff is not entitled to recover for injuries—damages, for injuries not found to have been caused by the individual or individuals alleged to have committed the negligence ...* Nor may he recover for any aggravation of a preexisting condition unless the aggravation is specifically attributable to the conduct of the individual or individuals alleged to have been negligent ...

As the trial judge's instruction indicated, the jury had to find that Ryan's conceded negligence produced Wilhelm's claimed injuries. Obviously, as discussed above, the jury did not so find.

pert, who examined Wilhelm in preparation for trial, testified:

> Q: Just one or two other things I would ask of you. I would ask that when you do have to render opinions today that you **render those opinions to a reasonable medical probability,** which basically means that something, some particular fact is more likely than not?
>
> A: Right....
>
> Q: But one question that I have to ask you is **whether there is a relationship between the May 2001 accident and the problems, especially the surgery that occurred in February—symptoms that occurred in February of 2003 and subsequent surgery in August of 2003?**
>
> A: Right. It is clear, it is absolutely clear in my mind that May 6, 2001 was just a spike in the chronology of events. That, in and of itself, did not cause a disc herniation. **This herniation occurred spontaneously independent of the auto accident of May 6, 2001 in February of 2003.** That is when the symptoms occurred, symptoms that when all complaints changed, that is when we saw a new MRI of the cervical spine being acquired, what had been acquired since 2001. **Everything changed in 2003....**
>
> Q: Did you conclude that there was any injury that Mr. Wilhelm suffered as a result of the automobile accident in May of 2001.
>
> A: Again, I wasn't there to see him there, wanting to be—say that auto accidents will often times cause strains and sprains and whiplash type injuries. It wasn't something severe, it was self-limited and Dr.

Vitt's reports indicate things got better. He stopped treating.

In sum, the jury could properly rely on the physician's testimony that, within a reasonable medical probability, the May 6, 2001 accident did not cause the condition revealed by the February 2003 MRI and was "just a spike in the chronology of events" between the two earlier accidents meriting surgery and the MRI and surgery in 2003. The jury's award did fairly reflect "strains and sprains ..." that were not "severe" and that "got better."

■ The evidence also supported the jury's decision to award little, if any, damages for Wilhelm's claims of emotional distress. Wilhelm claimed that he suffered "severe" emotional distress because he witnessed the death of Logan, but provided no medical evidence that he did so. He never received treatment from a psychologist, psychiatrist, or counselor resulting from the impact the accident had on him. Moreover, at trial, a disinterested police officer disputed Wilhelm's testimony about the extent of his involvement in helping Logan—involvement which Wilhelm claimed caused him severe distress.[27] This evidence obviously supports a finding that Wilhelm could not have suffered "severe" emotional distress as a result of witnessing Logan's injuries or death. In sum, we cannot find that the trial judge abused his discretion by denying Wilhelm's motion for additur because there was some evidence to support the jury's limited award of compensatory damages.

■ We also cannot find that the trial judge abused his discretion by denying Wilhelm's motion for a new trial. "The denial of a motion for a new trial will constitute an abuse of discretion if the jury verdict was against the great weight of the evidence, no reasonable jury could have reached the result, and the denial was untenable and unreasonable."[28] For the

---

27. *See supra* n. 1.

28. *Pesta v. Warren*, 888 A.2d 232, 2005 Del. LEXIS 510, at *5 (Del. Dec. 14, 2005) (OR-

reasons discussed above, the jury verdict was not against the great weight of the evidence because there was ample evidence supporting the jury's verdict.

### C. *Wilhelm's claim that the granting in part and denial in part of plaintiff's motion for costs under Del.Super. Ct. Civ. R. 54(d) was an abuse of discretion and clear error of law.*

Before trial, Ryan sent Wilhelm an offer of judgment for $25,000. Wilhelm rejected the offer and the jury returned a verdict in Wilhelm's favor for $4,108. After trial, Wilhelm, as the prevailing party, filed a motion for costs under Superior Court Rule 54(d). Wilhelm claimed that he was entitled to his costs incurred *both before and after* the offer of judgment. Ryan countered claiming that she was entitled to her costs incurred after the offer of judgment under Superior Court Civil Rule 68 because the offer of judgment exceeded the jury's verdict. Moreover, Ryan contended that Wilhelm was not entitled to any costs incurred before or after the offer of judgment, under *Greenage v. Ward.*[29] The trial judge declined to follow *Greenage* and granted Wilhelm his costs incurred before the offer of judgment but denied him his costs incurred after the offer of judgment. The trial judge also granted Ryan her costs incurred after the offer of judgment.

■ Wilhelm now contends on appeal that the trial judge erred by denying him his costs incurred *after* the offer of judgment. Wilhelm's claim requires us to analyze Rule 54(d) and Rule 68. Rule 54(d) provides:

Except when express provision therefor is made either in a statute or in these Rules or in the Rules of the Supreme Court, costs *shall be allowed* as of

course to the prevailing party upon application to the Court within ten (10) days of the entry of final judgment unless the Court otherwise directs.

Rule 68 provides:

At any time more than 10 days before the trial begins a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, with costs then accrued. If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the Clerk shall enter judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. **If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.** The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, the party adjudged liable may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

Wilhelm contends that it is clear from a plain reading of Rule 54(d) that plaintiff "shall" be awarded "costs" as the prevail-

---

DER) (citing *Storey v. Camper,* 401 A.2d 458, 465 (Del.1979)).

**29.** 2001 WL 985086, 2001 Del.Super. LEXIS 327 (Del.Super. August 1, 2001).

ing party, and that "costs" must be read to include those incurred both before and after the offer of judgment. Wilhelm suggests that Rule 54(d) grants the prevailing party a virtual unqualified right to costs. Wilhelm's argument lacks merit. Wilhelm ignores the fact that Rule 54(d) states that "except when express provision therefore is made . . . in these rules." Certainly this phrase makes the qualifying party's right to receive costs subject to Rule 68.

■ Rule 68 expressly provides that: "if the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Reading this provision in connection with Rule 54(d), we find that Rule 68 subjects the prevailing party's right to costs incurred after a proper offer of judgment is filed to the condition that he be awarded an amount in excess of that offer of judgment. Rule 68 does not place any condition on the prevailing party's recovery of costs incurred before the offer of judgment, but does condition the recovery of costs incurred after an offer of judgment on the offeree receiving an award in excess of the offer of judgment.

■ Our interpretation of Rule 68 and Rule 54(d) is consistent with Rule 68's purpose. The purpose of Rule 68 is to encourage settlement by shifting the risk of proceeding with the lawsuit to the offeree.[30] If we accepted Wilhelm's contention

and interpreted Rule 54(d) and Rule 68 to mean that the offeree is always entitled to his costs if he prevails (including costs incurred after the offer of judgment when the verdict is less than the offer of judgment) then very little risk would shift to the offeree. The offeree would simply have to pay the offeror's costs incurred after the offer of judgment if the offer of judgment exceeded the verdict while receiving his own directly or as a credit. This cannot be what the rule contemplated because the risk of bearing all costs incurred after the offer of judgment must be placed on the offeree to strike the proper balance and encourage settlement. Therefore, we hold that when an offeree receives a verdict in his favor, but one less than a properly filed Rule 68 offer of judgment, the offeree will be permitted to recover his costs incurred before the offer of judgment under Rule 54(d), but will be liable for costs incurred after the offer of judgment, including his own, under Rule 68.

Ryan asked the trial judge to follow *Greenage*[31] and to decline to give Wilhelm any costs, but the trial judge refused to follow *Greenage*. In *Greenage*, the plaintiffs received a verdict less than an offer of judgment.[32] After the trial, the plaintiffs filed a motion, as the prevailing party, for their costs incurred before the offer of judgment.[33] There, the plaintiffs conceded that they were not entitled to their costs

---

**30.** *Flood v. Riley*, 2002 WL 32067552, 2002 Del.Super. LEXIS 526, at *2 (Del.Super. Dec. 31, 2002) citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981)("The purpose of Rule 68 is to encourage the settlement of litigation. In all litigation, the adverse consequences of potential defeat provide both parties with an incentive to settle in advance of trial. Rule 68 provides an additional inducement to settle in those cases in which there is a strong probability that the plaintiff will obtain a judgment but the amount of recovery is uncertain. Because prevailing plaintiffs presumptively will obtain costs under Rule 54(d), Rule 68 imposes a special burden on the plaintiff to whom a formal settlement offer is made. **If a plaintiff rejects a Rule 68 settlement offer, he will lose some of the benefits of victory if his recovery is less than the offer.**").

**31.** 2001 WL 985086, 2001 Del.Super. LEXIS 327.

**32.** *Id.* at *2–3.

**33.** *Id* at *1–2.

incurred after the offer of judgment under Rule 68.[34] The trial judge found that the plaintiff was not entitled to his costs incurred before the offer of judgment because "by rejecting a Rule 68 offer of judgment, plaintiffs increased their burden to recover costs under Rule 54(d) to victory in excess of the pre trial offer of judgment."[35]

As the trial judge did in this case, we decline to follow *Greenage*. Rule 68 cannot be fairly read to limit an offeree's ability to recover his costs incurred before the offer of judgment. The rule explicitly states that "the offeree must pay costs *after the making of the offer.*" Moreover, it would be unfair to limit the offeree's right to recover costs incurred before the offer of judgment because they are costs that will not be avoided by accepting the offer of judgment. Put simply, the offeree would have incurred those costs even if he accepted the offer of judgment. Thus, to the extent *Greenage* is inconsistent with this Opinion, it is overruled.

In sum, the trial judge did not legally err by only awarding Wilhelm his costs incurred before the offer of judgment. We find that the only reasonable interpretation of Rule 54(d) and Rule 68 requires a prevailing plaintiff, who receives an award less than the offer of judgment, to pay all costs incurred after the offer of judgment, including his own.

### Conclusion

For the foregoing reasons, the judgments of the Superior Court are AFFIRMED.