**NEW CINGULAR WIRELESS PCS, a/k/a AT & T, Petitioner Below/Appellant,**

v.

**SUSSEX COUNTY BOARD OF ADJUSTMENT, Sea Pines Village Condominium Association of Owners, Gary Bogossian, John Hoefferle, Barbara McNally, Fred McNally, and David Gerk, Respondents Below/Appellees.**

No. 392, 2012.

Supreme Court of Delaware.

Submitted: Feb. 27, 2013.
Decided: May 9, 2013.
Rehearing Denied May 23, 2013.

---

14.  *Turbitt v. Blue Hen Lines, Inc.,* 711 A.2d    1214, 1216 (Del.1998).

Richard A. Forsten, Esquire (argued), and Whitney W. Deeney, Esquire, of Saul Ewing, Wilmington, Delaware for appellant.

Robert V. Witsil, Jr., Esquire (argued), of Robert V. Witsil, P.A., Georgetown, Delaware for appellees Sea Pines Village Condominium Association of Owners, Gary Bogossian, John Hoefferle, Barbara McNally, Fred McNally and David Gerk.

James P. Sharp, Esquire, of Moore & Rutt, P.A., Georgetown, Delaware for appellee Sussex County Board of Adjustment.

Before HOLLAND, BERGER, JACOBS and RIDGELY, Justices, and STRINE, Chancellor,[1] constituting the

1. Sitting by designation pursuant to art. IV,     § 12 of the Delaware Constitution and Su-

Court en banc.

RIDGELY, Justice:

New Cingular Wireless PCS (now known as "AT & T") filed an application with the Sussex County Board of Adjustment ("the Board") for a special use exception to construct a 100–foot telecommunications monopole, or "cell tower," on a commercially zoned property located at 32919 Coastal Highway, just outside of Bethany Beach. Collocation of telecommunications equipment on existing freestanding towers, antennas, monopoles, buildings or water towers/tanks are permitted without a special use exception. A special use exception is required before a cell tower may be erected within 500 feet of a residential zone.

As required by the Sussex County ordinance, AT & T submitted documentation with its application showing that existing structures within a two-mile radius of the proposed location were not available for collocation. The Sea Pines Village Condominium Association of Owners, along with individual residents (collectively, "the Association") who lived near the proposed location, opposed the application. The Board ultimately denied AT & T's application. The Board cited in its decision a representation of Bethany Beach that Bethany officials had been told AT & T had no interest in using Bethany's water tower as an antennae location. On appeal to the Superior Court, the court acknowledged in its opinion that while this appeal was pending "Bethany voted unanimously to reject

AT & T's request to use [Bethany's] water tower as an antenna location" and that "Bethany was in fact unwilling to negotiate with AT & T." The reasoning for this refusal to allow a collocation on the Bethany water tower was not explained by the trial court. After questioning "whether what took place with Bethany was 'cricket'," the Superior Court affirmed based on the record presented.[2]

In its written decision denying AT & T's application, the Board concluded that AT & T "had not met its burden [under the Sussex County Code] of proving that the proposed use would not affect adversely the uses of adjacent and neighboring properties." The Superior Court explained AT & T's burden with similar language. But the Sussex County Code requires a lesser burden—special use exceptions shall be granted unless the Board finds "such exceptions will not *substantially* affect adversely the uses of adjacent and neighboring property."[3]

■ AT & T argues that the Board's decision must be reversed because the Board failed to apply the correct legal standard. We agree. Our precedent makes clear that "[a] Board's decision based upon the proper legal standard is a prerequisite to the court's performance of a review to determine the existence of substantial evidence."[4] The Board's decision must be vacated as a matter of law so that AT & T may reapply for a special use exception with the Board applying the proper legal standard.[5]

---

preme Court Rules 2 and 4.

**2.** *New Cingular Wireless PCS a/k/a AT&T v. Bd. of Adjustment*, 2012 WL 5578866 (Del.Super. June 18, 2012).

**3.** Sussex Cty. C. § 115–210 (emphasis added).

**4.** *Hellings v. Bd. of Adjustment*, 734 A.2d 641, 1999 WL 624114, at *2 (Del.1999).

**5.** AT & T also claims that the Board's decision is not supported by substantial evidence, and it is arbitrary and capricious. As we find the Board applied the incorrect legal standard in denying the application, we need not consider these claims.

## Factual Background

AT & T planned to construct a 100–foot tall cell tower outside of Bethany Beach, Delaware in order to provide reliable wireless service—as required by its Federal Communication Commission license—in a two mile long gap from north to south along Route 1, centered near the Town of Bethany Beach. AT & T applied to the Sussex County Board of Adjustment for a "special use exception" to erect the proposed tower. AT & T's proposed location was on property shared by a gas station, a fast food restaurant, and a convenience store. This property is adjacent to Sea Pines Village, which is a residential condominium complex.

AT & T's initial application was approved by the Board, but that approval was later reversed by the Superior Court due to the Board's failure to provide proper notice of the hearing.[6] During the period between the initial application, and the one at issue here, AT & T was permitted to erect a temporary tower on the property.

Prior to making its decision on AT & T's second application, the Board conducted a public hearing. Following a five hour public hearing, the Board tabled the matter until its meeting the following month. At that meeting, the Board voted unanimously to deny AT & T's application after determining that AT & T had not submitted sufficient evidence to prove requisite elements of the ordinance. The Board found that AT & T "had not met its burden of proving that the proposed use would not affect adversely the uses of the adjacent properties." According to the Board, AT & T did not prove a substantial need for a tower at the proposed location, or that existing structures within a two mile radius were not available for collocation. The Board also was "not persuaded as to AT & T's need for seamless service."

AT & T appealed to the Superior Court. The Superior Court affirmed the Board's decision, stating *inter alia*, that "[t]he applicant for a special use exception carries the burden of demonstrating that the proposed use will not adversely affect the neighboring property."[7] This appeal followed.

## Discussion

When reviewing the Board's decision, this Court applies the same standard to be applied by the Superior Court.[8] The Board's decision is reviewed for errors of law, and to determine whether substantial evidence exists to support the Board's findings of fact and conclusions of law.[9] We will not weigh the evidence, determine questions of credibility, or make our own factual findings.[10] The Superior Court's legal determinations, including questions of statutory interpretation, are reviewed *de novo*.[11] AT & T expressly raised before the Superior Court the failure of the Board to apply the correct legal standard in this case.[12]

6. *Sea Pines Vill. Condo. Assoc. of Owners v. Bd. of Adjustment*, 2010 WL 8250842 (Del.Super. Oct. 28, 2010).

7. *New Cingular Wireless PCS*, 2012 WL 5578866 at *11 (citing *Gutierrez v. Bd. of Adjustment*, 2010 WL 2854293, at *3 (Del.Super. July 16, 2010)).

8. *CCS Investors, LLC v. Brown*, 977 A.2d 301, 319–20 (Del.2009).

9. *Id.*

10. *Id.* at 320.

11. *Bd. of Adjustment v. Verleysen*, 36 A.3d 326, 329 (Del.2012).

12. The question was raised before to the Superior Court by supplemental briefing, on January 20, 2012. Appellant's Op. Br.App. A1565–1578 (herein "App.").

Section 115–194.2 of the Sussex County Code sets forth the technical requirements for constructing a commercial communications tower. Subsection (A) of the ordinance provides that any tower erected within 500 feet of any residentially zoned lot requires a special use exception.[13] Subsection (B) provides that collocation of telecommunication equipment is permitted without a special use exception on existing, freestanding towers, antenna, monopoles, buildings, water towers/tanks and other similar structures subject to site plan review by the Planning and Zoning Commission.[14] Section 115–209 of the Code vests authority to grant or deny special use exceptions in the Sussex County Board of Adjustment.[15] Special use exceptions are permitted "if the Board finds that, in its opinion, as a matter of fact, such exceptions will not *substantially* affect adversely the uses of adjacent and neighboring property." [16]

Here, AT & T claims that the Board's decision must be reversed because the Board failed to apply the "substantially affect adversely" standard. Our decision in *Hellings v. City of Lewes Board of Adjustment* is controlling. In *Hellings,* this Court considered an appeal from property owners who had constructed a nonconforming home and sought a variance.[17] To obtain a variance, the zoning code required a showing of an "exceptional practical difficulty." The Board denied the variance, applying an "undue hardship" standard. On appeal, the Superior Court upheld the Board's decision, finding that although the Board applied an incorrect standard, if the correct standard had been applied, the variance would have been denied. We reversed because:

> A Board decision based upon the proper legal standard is a prerequisite to the court's performance of a review to determine the existence of substantial evidence.... [H]aving determined that an error of law was made at the administrative level, the Superior Court was not free to review the evidence and apply a different, more lenient, legal standard because to do so would be to substitute its own judgment for that of the Board.[18]

We must reverse in this case as well. It is axiomatic that a statute or an ordinance is to be interpreted according to its plain and ordinary meaning.[19] "Words in a statute [or an ordinance] should not be construed as surplusage if there is a reasonable construction which will give them meaning, and the courts must ascribe a purpose to the use of statutory language, if reasonably possible." [20] Special use exceptions are to be granted unless the Board finds the exception will "*substantially* affect adversely the uses of adjacent and neighboring property." "Some" adverse affect is insufficient under the ordinance to deny a special use exception. By requiring AT & T to prove no "adverse affect," the Board and the Superior Court required a heavier burden of proof than the ordinance demands. Adjectives do matter. By analogy, where the law requires a

**13.** Sussex Cty. C. § 115–194.2.

**14.** *Id.*

**15.** Sussex Cty. C. § 115–209.

**16.** *Id.* at § 115–210 (emphasis added).

**17.** *Hellings v. Bd. of Adjustment,* 734 A.2d 641, 1999 WL 624114, at *1 (Del.1999).

**18.** *Id.* at *2. *See also Gilman v. Dept. of Planning,* 2000 WL 305341, at *4 (Del.Super. Jan. 28, 2000).

**19.** *Chase Alexa, LLC v. Kent Cty. Levy Ct.,* 991 A.2d 1148, 1151 (Del.2010).

**20.** *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.,* 636 A.2d 892, 900 (Del.1994) (citations omitted).

showing of gross negligence, a showing of negligence is insufficient.[21] Neither the Board nor a reviewing court has the authority to rewrite the ordinance as was done in this case to impose a heavier burden of proof upon the applicant than the ordinance requires.

The Association argues that even, if the Board erred in applying the correct legal standard we still should affirm. The Association claims that AT & T failed to prove that there is no existing structures within a two-mile radius available for use. We decline the Association's invitation to address the sufficiency of the evidence before the Board. The sufficiency of the evidence on alternative locations is reviewed *in conjunction with* and not independent of the required analysis for the grant of a special use exception.

Sussex County Code § 115–194.2(D) does require that applicants seeking to build a communications antenna "submit to the Board of Adjustment documentation showing that existing structures within a two-mile radius of the proposed location are not available for collocation." The provision also requires the applicant to "include documentation substantiating the need for such tower at the proposed location."[22] AT & T provided this documentation.[23] AT & T also presented evidence—not discussed directly by the Board—substantiating the need for a tower at the proposed location.

■ The Association's argument necessarily invites judicial review of the sufficiency of the evidence before the Board. As in *Hellings*, the use of the proper legal standard by the Board is a prerequisite for judicial review of the sufficiency of the evidence. The Board's reliance upon Bethany Beach's representation about collocation on its water tower—which left the Superior Court questioning whether what took place concerning Bethany was "cricket"—further counsels against bypassing the administrative process intended by the General Assembly and the Sussex County government.[24] An error of law by the Board in applying the correct legal standard for a special use exception precludes judicial review of the sufficiency of the evidence before the Board.

Where, as here, the Board fails to apply the correct legal standard for a special use exception the Board's decision must be vacated so a new application may be made. The Delaware Code only permits a reviewing court to "reverse or affirm, wholly or partly, or may modify the decision brought up for review."[25] The option of remanding is excluded. In *Hellings*, we explained that "[a]bsent the power of remand, such a reversal vacates the Board's decision and the applicant may re-apply with the proceedings before the Board beginning anew."[26] Though *Hellings* considered a

---

**21.** *See e.g. Browne v. Robb*, 583 A.2d 949, 953 (Del.1990) (internal citation omitted), *cert. denied*, 499 U.S. 952, 111 S.Ct. 1425, 113 L.Ed.2d 477 (1991); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 651–52 (Del.Ch.2008); *Gelfman v. Weeden Investors, L.P.*, 859 A.2d 89, 113–14 (Del.Ch.2004) (discussing the "substantial" difference between gross negligence and simple negligence).

**22.** Sussex Cty. C., Supplementary Regulations § 115–194.2(D).

**23.** App. A89–106.

**24.** *See* 9 *Del. C.* § 6902(a) (delegating zoning power to Sussex County); *id.* § 6913 (creating the Sussex County Board of Adjustment); Sussex Cty. C. Ch. 115, Art. XXVII (authorizing the Board of Adjustment to hear appeals for zoning variance and enforce the provisions of the Sussex County Code).

**25.** 9 *Del. C.* § 6918(f).

**26.** *Hellings*, 734 A.2d 641, 1999 WL 624114 at *3 (*citing Searles v. Darling*, 83 A.2d 96, 99–100 (Del.1951); *Auditorium, Inc. v. Bd. of Adjustment*, 91 A.2d 528, 532 (Del.1952); *Bd.*

statute authorizing review of a municipal Board of Adjustment, the statute authorizing judicial review of decisions of the Sussex County Board of Adjustment contains identical language. The Board's decision must be vacated so that AT & T may re-apply for a special use exception.

### *Conclusion*

The judgment of the Superior Court is REVERSED, with instructions to RE-VERSE and VACATE the decision of the Board of Adjustment.

STRINE, Chancellor, concurring.

I support the result reached by the majority and their conclusion that the word "substantially" is an important one that cannot be ignored in applying § 115–210 of the ordinance.[27] I disagree, however, that the ultimate decision reached by the Board—to deny AT & T's application for a special use exception—can be overturned solely on this basis.[28] If the Board's determination that AT & T had not demonstrated that "existing structures within a two-mile radius of the proposed location are not available for collocation" or that AT &

T had not "substantiated" its need for a freestanding cell tower was proper and supported by substantial evidence on appeal to the Superior Court, then either determination, in my view, would provide an independent basis under §§ 115–209 and 115–194.2(D) of the ordinance to uphold the Board's decision.[29] But those determinations cannot be upheld because they were not supported by substantial evidence.[30]

The Board's findings and decision on these related issues were premised in an important way on AT & T's ability to improve the reliability of its service by placing an antenna on the water tower (sometimes described in the record as a "stand pipe") owned by the Town of Bethany Beach. Although an AT & T employee testified at the Board's hearing that the Town of Bethany Beach had twice rejected AT & T's application to place an antenna on a water tower,[31] a Town Council Member also testified that AT & T had not indicated any interest in using the water tower and that the Town remained open to allowing AT & T to use the tower as a site.[32] The Board relied upon the

---

of Adjustment v. White, 577 A.2d 754, 1990 WL 84693 at *2 (Del.1990); *1001 Jefferson Plaza Partnership, L.P. v. New Castle Cty. Dept. of Finance,* 695 A.2d 50, 52–53 (Del.1997) (other citations omitted)).

27. Sussex Cty. C. § 115–210.

28. *See* Appellant's Opening Br.App. 78–80 (Decision of the Sussex County Board of Adjustment) [hereinafter Board Decision].

29. Sussex Cty. C. § 115–209(B) (giving the Board the power to "hear and decide on applications for special exceptions upon which the board is specifically authorized to pass") [hereinafter "App."]; *id.* § 115–194.2(D) (requiring an applicant for a cell tower to "substantiat[e]" the need for that tower at a proposed location and to "submit to the Board of Adjustment documentation showing that existing structures within a two-

mile radius of the proposed location are not available for collocation").

30. *See* 29 *Del. C.* § 10142(d) ("The Court's review ... shall be limited to a determination of whether the agency's decision was supported by substantial evidence on the record before the agency."); *Mackes v. Bd. of Adjustment,* 2007 WL 441954, at *3 (Del.Super. Feb. 8, 2007) ("Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted).

31. App. 8.

32. *Id.* at 44 ("We [*i.e.,* the Town] attest that the documents that were put into the record are in fact true, and we were told that AT & T had no desire to use the Bethany Beach water tower for a facility.").

Council Member's testimony and premised its decision under § 115–194.2(D) to deny AT & T a special use permit on the availability of the water tower for use by AT & T.[33]

On appeal to the Superior Court, AT & T presented indisputable evidence in the form of admissions by the Town itself that made clear that the Town would not permit AT & T to use the water tower.[34] The Superior Court noted that the Board seemed to rely on a false premise in concluding that AT & T had not eliminated all possible locations for a facility in a two-mile radius.[35] Nonetheless, the Superior Court also held that it could not consider that undisputed evidence on appeal because that evidence had not been before the Board.[36]

But, on appeal, a reviewing court must ensure that the "evidence is legally ade-quate to support the Board's factual findings."[37] Although the Superior Court correctly noted that it could not reweigh the evidence relied on by the Board, the Superior Court was permitted by 9 *Del. C.* § 6918(e) to "take evidence" as part of the statutory review process. Once it became apparent that the Board had premised a key legal finding on a clearly erroneous factual determination, the Superior Court had the power and, in these unique circumstances, which troubled the Superior Court itself,[38] the duty to consider that undisputed evidence in order that a just determination of AT & T's application would be made.[39] However it came to be that the Town of Bethany Beach provided the Sussex County Board of Adjustment with the impression that the water tower was available to AT & T when it was not, the Town did so and caused the Board to rely upon a clearly erroneous fact, without which there is not substantial evidence to support the

---

33. Board Decision ¶ 4 ("[T]he Board determined that the Applicant had not submitted sufficient evidence to prove other requisite elements of the ordinance. AT & T did not prove ... that existing structures within a two mile radius were not available for co-location. ... *[T]he Town of Bethany Beach indicated that the Applicant declined to consider the possibility of an antenna on the stand pipe at the Bethany Beach Water Plant.*") (emphasis added).

34. *See id.* at 587 (Letter from Town of Bethany Beach to AT & T (Mar. 2, 2005)) ("The Town of Bethany Beach has no interest in erecting a cellular antenna on our water storage tower. The idea was unanimously rejected by our Council just a short time ago."); *id.* at 590 (Town of Bethany Beach Civil Alert (Jan. 26, 2011)) (notifying citizens that the "Council Voted Against a Proposal to Offer AT & T Access to the Town's Water Plant and Stand Pipe for Installation of a Cellular Antenna").

35. *New Cingular Wireless PCS v. Sussex Cty. Bd. of Adjustment*, 2012 WL 5578866, at *1 (Del.Super. June 18, 2012).

36. *Id.*

37. *Weiss v. Del. Dep't of Health & Soc. Servs.*, 2003 WL 21769007, at *3 (Del.Super. July 30, 2003) (citation omitted).

38. *New Cingular Wireless PCS*, 2012 WL 5578866, at *1 ("Bethany voted unanimously to reject AT & T's request to use its water tower as an antenna location. Given the Board's citation to the availability of other locations, specifically Bethany, the Court's out-of-the-record knowledge that Bethany was, in fact, unwilling to negotiate with AT & T leaves the Court questioning whether what took place concerning Bethany was cricket.").

39. 9 *Del. C.* § 6918(e) ("If, upon the hearing, it shall appear to the Court that testimony is necessary for the proper disposition of the matter, it may take evidence, or appoint a referee to take such evidence as it may direct and report the same to the Court with the referee's findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the Court shall be made.").

Board's finding under § 115–194.2(D).[40] Likewise, the Town's own role in leading the Board to believe the water tower was available for use rendered the Board's ruling arbitrary and capricious. To permit a ruling of a county adjustment board to stand when it is premised on a false finding of fact that a municipality within the county itself caused the board to make is Kafkaesque and the essence of arbitrary. By permitting the admission of additional evidence, 9 *Del. C.* § 6918(e) empowers the Superior Court to rectify situations like this and ensure that the Board's findings are based on substantial evidence.

The Board's reliance on this clearly erroneous fact finding also undermined its determination that placing an antenna on the water tower would provide adequate coverage and thus that AT & T failed to substantiate its need for a freestanding cell tower under § 115–194.2(D). But, as AT & T also points out, instead of addressing AT & T's contention that it needed a freestanding tower to provide "reliable" coverage as an FCC licensee in the Bethany Beach area,[41] the Board attributed to AT & T the notion that it was seeking "seamless" coverage, a word that the expert who testified for the Association used, not AT & T.[42] After doing so, the Board then made a conclusory finding that implied if the permit was not granted, AT & T's service, although not "seamless," would be "adequate" without seriously weighing the record evidence that service was not *reliable* in several areas of the Town.[43] In fairness to the Board, none of the parties before the Board seemed to present clear authority as to the applicable FCC standard AT & T was bound to meet as a licensee. But rather than consider the relevant reliability standard, even if that took an additional hearing to obtain input regarding what the FCC means by that term in practical application, the Board instead made a conclusory ruling based on different concepts from the license requirement of reliability.[44] When the Board examines the application again, it must apply the relevant FCC standard in determining whether AT & T has demonstrated a sufficient need.

For these reasons, I believe that the majority's conclusion as to the ultimate outcome is correct and concur in the result.

---

40. *See, e.g., Weeraratne v. Unemp't Ins. Appeal Bd.,* 1994 WL 164564, at *2, *4 (Del.Super. Apr. 14, 1994) (reversing a board's decision when it relied on a "clearly erroneous" fact because it "deprive[d] the Court of determining whether the law was properly applied to the facts") (citation omitted); *Janaman v. New Castle Cty. Bd. of Adjustment,* 364 A.2d 1241, 1244 (Del.Super.Aug.19, 1976) (reversing a board of adjustment's decision when the decision lacked "substantial evidence in the record upon which the Board might have properly granted a variance").

41. App. 8–9 (testimony of AT & T radio frequency engineer). *See also,* 47 C.F.R. § 24.103(a), (e) (requiring licensees to build enough "base stations" to "ensure *reliable* service for the technology utilized") (emphasis added); *Pinney v. Nokia, Inc.,* 402 F.3d 430, 456 (4th Cir.2005) ("The FCC licenses portions of the radio spectrum to wireless [telephone] service providers so they can provide [personal communication services], and *one of the main requirements for the grant of a license is that the licensee must construct enough base stations to provide coverage to the area for which it receives a license.*") (citing 47 C.F.R. § 24.103) (emphasis added).

42. Board Decision ¶ 5; *see* App. 31 (testimony of expert for the Association).

43. Board Decision ¶ 5.

44. *Id.*