# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| FMC CORPORATION, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. NO.: N16A-10-010 AML |
| | ) | |
| NEW CASTLE COUNTY SPECIAL | ) | |
| SERVICES DEPARTMENT; NEW | ) | |
| CASTLE COUNTY; and TRACEY | ) | |
| SURLES in her capacity as ACTING | ) | |
| GENERAL MANAGER of the | ) | |
| NEW CASTLE COUNTY SPECIAL | ) | |
| SERVICES DEPARTMENT, | ) | |
| | ) | |
| Respondents. | ) | |

Submitted: November 30, 2017
Decided: February 27, 2018

**Upon Review of Petitioner FMC Corporation's Writ of Certiorari:
Granted in part**

## <u>MEMORANDUM OPINION</u>

Jessica C. Watt, Esquire, and Brendan K. Collins, Esquire (admitted *pro hoc vice*), of BALLARD SPAHR, LLP, Wilmington, Delaware, Attorneys for Petitioner.

Max B. Walton, Esquire, and Kyle E. Gay, Esquire, of CONNOLLY GALLAGHER, LLP, Wilmington, Delaware, and Marlaine A. White, Esquire, of NEW CASTLE COUNTY OFFICE OF LAW, New Castle, Delaware, Attorneys for Respondents.


**LeGROW, J.**

This case considers the scope of the Special Services Department's General Manager's authority, specifically whether the General Manager has the authority to impose monetary penalties and award injunctive relief after finding a sewer user in violation of their permit or the County Code. Chapter 38 of the County Code grants the General Manager enforcement powers, including the power to suspend sewer services and revoke discharge permits. When the General Manager has cause to believe an industrial user is violating the County Code, the General Manager may hold a "show cause" hearing at which the putative violator may show cause why services should not be suspended.

In this case, however, the General Manager adjudicated the merits of Petitioner's alleged violations under the code and issued a final order requiring Petitioner to pay $7,000 in fines and $139,208 in actual costs, to pay future costs as assessed, and to submit a preventative plan for which Petitioner would bear the cost of implementation. I find the General Manager has no authority under the County Code to impose penalties and injunctive relief. My reasoning follows.

**Factual and Procedural Background**

The Special Services Department (the "Department") is a county agency that manages the New Castle County sewer system. FMC ("Petitioner") operates a food and nutrition manufacturing plant in Newark, Delaware. As part of its operations, Petitioner discharges microcrystalline cellulose, a food additive, into the sewer

system under to a county-issued discharge permit. The permit requires Petitioner to comply with all provisions of Chapter 38 (the "Chapter") of the County Code.

On January 22, 2016, the Department issued a notice of violation ("NOV") informing Petitioner that its discharge was obstructing the sewer system in violation of Petitioner's discharge permit. The Department issued several more NOVs to Petitioner regarding the obstruction. On April 21, 2016, the Department held a "show cause" hearing (the "hearing") requiring Petitioner to show cause why its discharge permit should not be revoked. During the hearing, Department representatives and Petitioner presented evidence regarding the obstruction to the Department's General Manager, who presided over the hearing. At the conclusion of the hearing, the General Manager requested supplemental evidence and briefing.

After receiving the parties' supplemental briefs, the General Manager issued a final order (the "Final Order") directing Petitioner to pay fines and actual and future costs, and to submit a plan designed to prevent future obstructions. Petitioner appealed the Final Order on October 27, 2016. On May 31, 2017, this Court held Petitioner had no statutory right to appeal, but granted Petitioner leave to file a petition for writ of certiorari. This Court granted certiorari and the parties briefed and argued the issue.

**The Parties' Contentions**

Petitioner argues the General Manager's Final Order is invalid for four reasons. First, Petitioner contends the Department exceeded its jurisdiction because (i) the enabling statute does not authorize the County to "hear and decide" matters of law, and (ii) the General Manager lacks authority to impose injunctive relief or monetary penalties. Second, Petitioner maintains that the hearing violated due process because the General Manager both investigated and adjudicated the proceedings. Third, Petitioner asserts the General Manager committed errors of law at the hearing by applying the wrong burden of proof, failing to consider evidence, and imposing penalties through the Final Order. Finally, Petitioner argues the General Manager proceeded irregularly by failing to provide an adequate record for judicial review.

In response, the Department and General Manager first argue the County has authority under the home rule doctrine to grant adjudicative powers to the Department, and the General Manager did not exceed the authority granted under the County Code. Second, Respondents contend due process is satisfied because the General Manager had no investigative role in Petitioner's case. Third, Respondents assert the General Manager applied the proper burden of proof under the County Code and considered all the evidence presented. Finally, Respondents argue the

3

General Manager preserved a proper record for judicial review as required by the County Code.

**ANALYSIS**

"Petitioners for a writ of certiorari must satisfy two threshold conditions: the judgment must be final and there can be no other available basis for review."[1] The reviewing court will consider "whether the tribunal below (1) committed errors of law, (2) exceeded its jurisdiction, or (3) proceeded irregularly."[2] "A decision will be reversed for an error of law committed by the lower tribunal when the record affirmatively shows that the lower tribunal has proceeded illegally or manifestly contrary to law."[3]

**A. The enabling statute and the home rule doctrine allow the County to establish a process under which the General Manager may hold hearings and issue administrative orders.**

Petitioner first argues the General Manager exceeded his powers under the enabling statute by holding the hearing and issuing the Final Order. Petitioner avers the Department's enabling statute contains no grant of authority to hear and decide matters of law. This, Petitioner argues, is in contrast to other county departments'

---

[1] *Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1213 (Del. 2008).
[2] *Id.*
[3] *Christiana Town Center, LLC v. New Castle Cty.*, 865 A.2d 521 (Table) (Del. 2004) (internal quotations omitted).

enabling statutes, which expressly grant authority to hold hearings and render decisions.[4]

Petitioner is correct that the Department's enabling statute, 9 *Del. C.* § 1341, contains no provision expressly granting the General Manager authority to hear matters or issue written decisions. The analysis, however, cannot end there. 9 *Del. C.* § 1521(a) accords the County general jurisdiction "over *all matters* pertaining to the County, . . . including the power to *act upon all matters* pertaining to sewers, sewerage disposal plants, . . . and sewer systems generally."[5] More broadly, the County's home rule authority under 9 *Del. C.* § 1101 grants the County "all powers which . . . would be competent for the General Assembly to grant by specific enumeration, and which are not denied by statute . . . ."[6] Those powers include adjudicatory powers that the General Assembly at times specifically grants to agencies.

Additionally, under the home rule doctrine, counties and municipalities "exercise the power of the sovereign except as limited by either the State Constitution or State Statute."[7] The Court of Chancery reviewed the home rule

---

[4] Pet'r's Br. 13. *See, e.g.*, 9 *Del. C.* § 1313(a) (granting the Department of Land Use the authority to review appeals in zoning matters).

[5] 9 *Del. C.* § 1521(a)(1) (emphasis added).

[6] 9 *Del. C.* § 1101(a). Petitioner does not argue the General Assembly is incompetent to grant authority to hear and decide issues involving sewer systems.

[7] *Schadt v. Latchford*, 843 A.2d 689, 691 (Del. 2004) (quoting *NAACP v. Wilm. Med. Ctr.*, 426 F.Supp. 919, 927 (D. Del. 1977)).

doctrine in *Salem Church v. New Castle Cty.*[8]  In *Salem Church*, a developer challenged the County Planning Board's authority to hear appeals from the County's Department of Land Use.[9]  The developer argued nothing in the Delaware Code granted the Planning Board authority to hear administrative appeals under its enabling statute.[10]

The Court of Chancery held the Planning Board had authority to hear appeals from the Department of Land Use under the home rule doctrine,[11] reasoning Section 1101 granted the County broad authority to enact procedures the General Assembly could have granted.[12]  The Court concluded the County granted the Planning Board jurisdiction to hear appeals properly because nothing in the Delaware Code or Constitution prohibited the procedure.[13]

Here, as in *Salem Church*, the County has broad authority to enact provisions that are not contrary to the Delaware Constitution or State statute, including the power to hear and decide.  As discussed below, the County Code grants the General Manager authority to hear and decide matters related to NOVs.  Nothing in the constitution, Section 1341, or any other statute Petitioner identified prohibits granting this adjudicatory power to the Department.  Accordingly, the General

---

[8] 2006 WL 2873745, at *5 (Del. Ch. Oct. 6, 2006).
[9] *Id.* at *4.
[10] *Id.* at *5.
[11] *Id.*
[12] *Id.* n.44.
[13] *Id.*

Manager did not exceed the authority under the enabling statute by holding the hearing.

### B. The General Manager exceeded its authority under the County Code by imposing penalties and granting the Department injunctive relief.

In the Final Order, the General Manager directed Petitioner to: (1) pay $7,000 in fines pursuant to the NOVs; (2) reimburse $139,208 to the Department for actual costs incurred to monitor, repair, and clean blockages allegedly caused by Petitioner; (3) provide the Department with a plan to prevent further obstruction of the sewer system, at sole cost to Petitioner; and (4) pay future costs associated with monitoring, repairing, and cleaning blockages caused by Petitioner until the plan is approved. Petitioners argue the General Manager exceeded his authority under the County Code by granting the Department injunctive relief and monetary penalties.

In Delaware, "a statute or an ordinance is to be interpreted according to its plain and ordinary meaning."[14] Under settled rules of construction, courts are obliged to "read the [s]tatute as a whole and to harmonize the parts thereof."[15] "Words in a statute or an ordinance should not be construed as surplusage if there is a reasonable construction which will give them meaning, and the courts must ascribe a purpose to the use of statutory language, if reasonably possible."[16]

---

[14] *New Singular Wireless PCS v. Sussex Cty. Bd. of Adjustment*, 65 A.3d 607, 611 (Del. 2013).
[15] *Murphy v. Bd. of Pension Tr.*, 442 A.2d 950, 951 (Del. 1982).
[16] *New Singular Wireless PCS*, 65 A.3d at 611 (quoting *Oceanport Indus., Inc. v. Wilm. Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994)).

7

Resolution of Petitioner's challenge to the General Manager's authority to award monetary and injunctive relief turns on the proper interpretation of Article 3 of the Chapter, which contains four sections: (i) Prohibitions;[17] (ii) Enforcement;[18] (iii) Penalties;[19] and (iv) Means of Appeal.[20] This case concerns the Enforcement and Penalties sections. In the Enforcement Section,[21] the General Manager is granted specified enforcement authority[22] and "General Manager" is the active pronoun in the enforcement provisions concerning Right of Entry,[23] Notice of Violation,[24] Show cause hearing,[25] Administrative order,[26] Suspension,[27] and Notification of proposed termination of service.[28]

---

[17] New Castle Cty. C. § 38.03.001.

[18] *Id.* at § 38.03.002.

[19] *Id.* at § 38.03.003.

[20] *Id.* at § 38.03.004.

[21] *Id.* at § 38.03.002.

[22] *Id.* at § 38.03.002.A ("All rules and regulations described in this chapter and adopted by the Department in the Environmental Response Plan shall be enforced by the General Manager of the Department of Special Services or his or her authorized representative.").

[23] *Id.* at § 38.03.002.B ("The General Manager . . . may go upon any land . . . .").

[24] *Id.* at § 38.03.002.C ("When the General Manager . . . has reasonable cause to believe that any person has violated or is violating this Chapter . . . the General Manager . . . may serve upon such person a written notice of violation.").

[25] *Id.* at § 38.03.002.D ("The General Manager . . . may order any person who contributes to a violation of this Chapter . . . to show cause why a proposed enforcement action should not be taken.").

[26] *Id.* at § 38.03.002.E ("When the General Manager . . . has reasonable cause to believe that any person has violated or continues to violate this Chapter . . . he or she may issue an order to the person responsible for the discharge . . . .").

[27] *Id.* at § 38.03.002.F ("The General Manager . . . may suspend the sewer service and/or the permit of a person . . . .").

[28] *Id.* at § 38.03.002.G ("The General Manager shall not terminate service to a person or revoke a discharge permit under this Chapter . . . without first delivering to the person written notice of such proposed termination or revocation.").

In contrast, the Penalties Section describes: (1) penalties and fines that may be imposed on violators of the Chapter;[29] (2) remedies and relief available to the General Manager in pursuing a claim against violators;[30] and (3) requirements for a valid consent order.[31] The penalties and fines provisions are contained in Subsections A and B. In contrast to the active voice used in the Enforcement Section, Subsections A and B were written in the passive voice, describing what fines may be imposed on the violator, without providing *who* may impose the fines. Subsection A also specifies that a willful violation of the Chapter constitutes a criminal misdemeanor.[32] Moreover, the remedies and relief specified in Subsections C and D are written in the passive voice and identify the relief, including injunctive relief and monetary damages, the General Manager may obtain through a civil action. In contrast, Subsection E employs the active voice and refers to performance bonds the General Manager may require a user to post.

Respondents argue Subsections A and B should be read to give the General Manager unilateral authority to impose fines and penalties. This reading, however, is untenable for three reasons. First, where the Chapter's drafters intended to give the General Manager a particular power, they did so by specifying that power using

---

[29] *Id.* at § 38.03.003.A-B.
[30] *Id.* at § 38.03.003.C-E.
[31] *Id.* at § 38.03.003.F.
[32] *Id.* at § 38.03.003.A.1.

9

the active voice.  In contrast, the Penalties and Fines Subsections do not mention the General Manager, except to state that he "may recover" attorneys' fees, costs, and expenses and may collect them through any available remedy.  This difference in the language presumably was intentional and logically and coherently may be read as limiting the General Manager to seeking those monetary assessments through a civil action.

Second, Respondents' interpretation would render Subsection D of the Penalties Section surplusage because there would be no need to pursue a civil action in Court if the General Manager unilaterally could impose penalties.  Third, it is plain, as Respondents concede, that the General Manager may not adjudge a user guilty of a criminal charge or sentence a user accordingly.  Yet Respondents' interpretation of the County Code as allowing the General Manager to adjudicate and impose the specified penalties and fines would permit just such a result, including a possible prison sentence for repeated violations.[33]

Accordingly, it is more consistent to read the County Code as allowing the General Manager to pursue a claim for penalties from a court.  Importantly, this interpretation does not eliminate all the General Manager's enforcement powers.  In addition to the powers enumerated in the Enforcement Section of the Chapter,[34] the

---

[33] *See id.* at §§ 1.01.009, 38.01.003(A)(1).
[34] The General Manger may pursue other enforcement activities under the Section, such as enforcing a right of entry, issuing notice of violation, holding a show cause hearing, issuing an

10

General Manager may maintain a civil action to establish the damages specified in the Penalties Section, and then may collect those damages through typical collection methods or by adding the amounts to the user's sewer service charge.[35] The General Manager may not, however, unilaterally assess and enforce the penalties through a Final Order. Accordingly, the General Manager exceeded his authority under the County Code by imposing fines and actual and future costs through the Final Order, rather than pursuing those damages through a civil action.

Additionally, Petitioner challenges the General Manager's authority to order Petitioner to provide the Department with a preventative plan and to implement that plan at Petitioner's sole cost. No provision in the County Code grants the General Manager authority to order violators to submit and pay for a preventative plan in the context of an administrative order. Rather, violators are required to submit a plan in Subsection C of the Enforcement Section. Subsection C requires violators to submit a plan to the General Manager ten days after receipt of an NOV.[36] A Subsection C plan must explain the reason(s) for the Chapter violation and give "a plan for satisfactory correction and prevention of potential future violations, including

---

administrative order, and suspending sewer services and discharge permits. *Id.* at § 38.03.002.B-G.

[35] *See id.* at § 38.03.003.B.

[36] *Id.* at § 38.03.002.C ("Within ten (10) working days of receipt of this notice, the person shall submit to the General Manager of the Department of Special Services an explanation of the violation and a plan for satisfactory correction and prevention of potential future violations, including specific required actions. Submission of this plan shall not relieve the person of liability for any violation occurring before or after the receipt of the notice of violation.").

specific required actions."[37]  This plan submission occurs after the General Manager

issues an NOV, not after a for cause hearing and administrative order, such as the

one that occurred in this case.  Moreover, the plan seems contingent upon a violator

conceding the violation, rather than a remedy that may be ordered where the

violation is disputed.[38]  In other words, Subsection C of the Enforcement Section

does not confer broad injunctive powers on the General Manager.

Alternatively, if a party continues to violate the Chapter, refuses to submit a

plan, or disputes the violation, Subsection C of the Penalties Section allows the

General Manager to (i) suspend service, and/or (ii) petition a court of competent

jurisdiction to grant an injunction to constrain or compel the actions of the violator.[39]

In Delaware, the Court of Chancery has exclusive jurisdiction to grant injunctive

relief.[40]  Again, if the General Manager had authority to order injunctive relief,

Subsection C of the Penalties Section would be superfluous.

---

[37] *Id.*

[38] Read in context, it would make little sense to require a user who disputed either the cause or extent of a violation to submit a corrective plan ten days after receiving the NOV and before a show cause hearing even occurred.

[39] *Id.* at § 38.03.003.C ("Whenever a person has violated or continues to violate this Chapter or a permit, the General Manager of the Department of Special Services, through counsel, may petition a court of competent jurisdiction for the issuance of a temporary or permanent injunction or both to restrain or compel the actions of the person.").

[40] 10 *Del. C.* § 341; *Nat'l Indus. Grp. v. Carlyle Inv. Mgmt., LLC*, 67 A.3d 373, 382 (Del. 2013) (". . . the Court of Chancery is the Delaware court that is constitutionally and statutorily empowered to grant injunctions and to order specific performance.").

Here, the General Manager exceeded his authority under the County Code by ordering unilaterally Petitioner to submit and implement a preventative plan at Petitioner's cost. Such an order is injunctive relief in violation of the County Code and the Court of Chancery's jurisdiction.

### C. Due process was satisfied because the for cause hearing is an investigative, not adjudicative, proceeding under the County Code and requires fewer procedural safeguards.

Petitioner asserts both facial and as-applied due process claims, that is, that the County Code violates due process both on its face and in the manner applied by the General Manager.[41] Because the Court concludes the General Manager exceeded its jurisdiction by ordering the relief challenged, Petitioner's as-applied due process violations are moot. As to the facial challenge, Petitioner argues the hearing violated its due process rights by combining in the General Manager investigative and adjudicative powers.

The U.S. and Delaware constitutions guarantee due process of law.[42] Administrative hearings must adhere to due process because they are quasi-judicial in nature.[43] Under *Slawick v. State*,[44] Delaware courts apply the three *Eldrige* factors when considering an alleged due process violation:

---

[41] At oral argument, the Respondents argued, for the first time, that FMC waived its due process argument by failing to raise it before the General Manager. Because neither parties' briefs raised waiver, the Court will address FMC's due process argument.

[42] U.S. Const. amend. XIV, § 1; Del. Const. art. I, § 9.

[43] *Off. of Mgmt. & Budget v. Pub. Emp't Rel. Bd.*, 2011 WL 1205248, at *2 (Del. Super. Mar. 29, 2011).

[44] 480 A.2d 636 (Del. 1984).

> [*F*]*irst,* the private interest that will be affected; *second,* the risk of an erroneous deprivation of such interest and the probable value, if any, of additional or substitute procedural safeguards; and *finally,* the State interest, including the function involved, and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.[45]

Delaware courts have recognized several elements that safeguard due process: (1) notice of the basis of the governmental action; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result.[46] Any and all these elements may be required to safeguard due process in a given situation.

Here, Petitioner argues the General Manager failed to be a neutral arbiter during the hearing. As discussed above, Subsection C of the Enforcement Section intends the hearing to provide a forum for the putative violator to show cause why an enforcement action—such as service/permit suspension—should not be taken. The additional relief awarded in the Final Order was invalid and Petitioner's due process arguments relating thereto are moot.

For a valid hearing under the County Code, however, nothing indicates the General Manager must be a neutral arbiter. Rather, the County Code provides for a

---

[45] *Id.* at 645.
[46] *Goldberg v. City of Rehoboth Beach*, 565 A.2d 936, 942 (Del. Super. 1989).

show cause hearing at which the General Manager may interview the putative violator after issuing an NOV. The hearing is, in a sense, an investigative proceeding designed to help the General Manager determine what enforcement action, if any, the Department should take. Therefore, the General Manager does not act in an adjudicative role and need not be entirely neutral. The opportunity for a neutral arbiter is afforded in the event the General Manager pursues a civil action.

Even though the hearing is designed to be an investigative proceeding, the record shows the Department afforded Petitioner several procedural protections. Petitioner, represented by counsel, was given notice, an opportunity to present evidence and make oral presentations, and a decision stating the reasons for the result. Accordingly, the proceedings satisfied Petitioner's due process rights.

### D. The General Manager committed errors of law by imposing penalties through the Final Order, but applied the correct burden of proof.

Petitioner argues the General Manager committed errors of law during the show cause hearing by (1) applying the wrong burden of proof, (2) ignoring uncontroverted evidence, (3) basing the Final Order on evidence not in the record, and (4) imposing penalties through the Final Order. As previously discussed, the General Manager erred by imposing penalties through the Final Order. The County Code is silent as to what evidence the General Manager must consider during the hearing. The Court therefore cannot find the General Manager committed errors of law by failing to review all the evidence.

As to the burden of proof, Subsection D of the Enforcement Section states "any person who contributes to [a] violation of this Chapter or permit or order issued under this Chapter [may be ordered to] show cause why a proposed enforcement action should not be taken."[47]  Accordingly, Subsection D puts the burden on the putative violator to show cause why an enforcement action should not be taken.  The General Manager, therefore, committed no error of law by requiring Petitioner to show such cause why its discharge permit should not be revoked.

**E. The General Manager proceeded regularly by preserving an adequate record below insofar as the Final Order stated the reasons for potentially revoking Petitioner's permit and sewer service.**

Petitioner argues the General Manager proceeded irregularly by failing to preserve an adequate record for judicial review.  Subsection G of the Enforcement Section provides that a notice of proposed termination of service or revocation of discharge permit "shall state the reasons of such termination or revocation."[48]

The portions of the Final Order not held invalid by the balance of this opinion do little more than serve as notice of a potential future termination of service.  That is, the Final Order did not revoke the discharge permit or suspend sewer services, but reserved the right to pursue those actions.  The Final Order summarized the evidence that informed the General Manager's decision, specifically, the General Manager's findings that the blockage material was present exclusively in Petitioner's

---

[47] New Castle Cty. C. § 38.03.002.D.
[48] *Id.* at § 38.03.002.G.1.

discharge and that the Department's flow map demonstrated Petitioner obstructed the flow of the sewer system.  The General Manager therefore proceeded regularly by explaining the reasons for potentially revoking Petitioner's discharge permit and suspending sewer service.  That Petitioner disagrees with that conclusion or contends the weight of the evidence showed otherwise is not an argument this Court may consider on certiorari review.

**CONCLUSION**

For the foregoing reasons, the Final Order is **VACATED**.