IN THE SUPREME COURT OF THE STATE OF DELAWARE

ZOHRA HAJALI, §
§
Plaintiff Below, § No. 516, 2017
Appellant, §
§
v. § Court Below—Superior Court
§ of the State of Delaware
OFFICER ANDREW W. DALLER, §
§ C.A. No. N15C-07-111
Defendant Below, §
Appellee. §
§
§

Submitted: December 28, 2018
Decided: February 21, 2019

Before **STRINE,** Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## **ORDER**

After consideration of the parties' briefs and the record on appeal, it appears

to the Court that:

(1)     The plaintiff below-appellant, Zohra Hajali, filed this appeal after the

Superior Court granted in part and denied in part the revised motions for fees and

costs filed by the defendant-below appellee, Officer Andrew W. Daller, and denied

Hajali's motion for a new trial after a jury verdict in favor of Officer Daller.[1]  We

affirm the judgment of the Superior Court.

---

[1] *Hajali v. Daller*, 2017 WL 5606828 (Del. Super. Ct. Nov. 9, 2017); *Hajali v. Daller*, 2017 WL 5593516 (Del. Super. Ct. Nov. 8, 2017).

(2)     This is a civil action arising from the arrest and detainment of Hajali in 2013.  Hajali sued Officer Daller for: (i) violation of the Fourth and Fourteenth Amendments based on fabrication of evidence; (ii) violation of 42 U.S.C. § 1983 based on unlawful detention under the Fourth Amendment; (iii) malicious prosecution; and (iv) wanton negligence under the county and municipal tort claims act.  After a five-day trial, the jury reached a verdict in favor of Officer Daller.

(3)     The trial record reflects that Hajali was leasing a house to tenants who were delinquent in their rent payments.  The lease was due to expire on June 30, 2013.  In May 2013, Hajali's counsel sent a letter to the tenants informing them that they were delinquent in their rental payments, they had five days to pay the total amount due or he would file an action for the rent due and possession of the property, and Hajali's agent, Jules Meliodon, would be entering the house on June 14, 2013 to inspect the house with the tenants and photograph any damage.

(4)     On June 14, 2013, Hajali (who had flown in from Morocco) and Meliodon, along with a New Castle County police officer they had asked to accompany them for an eviction, went to inspect the house and take photographs. The tenants were not present.  The house was messy, with clothes piled up in the living room.  Hajali and Meliodon testified that they believed the house was abandoned.

(5) After locking the door and gates, Hajali and Meliodon left the property. Hajali returned to Morocco to spend time with her mother, who was dying. On June 18, 2013, Hajali's counsel sent a letter to the tenants informing them that Hajali was retaking possession of the property, changing the locks, and disposing of the abandoned personal property.

(6) On July 3, 2013, Meliodon returned to the property to cut the grass. He noticed that the gates and back door were open. He went into the house where he noticed the same mess and two flat screen televisions. Meliodon testified that he took the televisions to his house for safekeeping. He also changed the locks to secure the property. He left a message for the tenants, informing them that he had taken the televisions. Meliodon testified that he did not tell Hajali about taking the televisions, but Hajali testified that he did tell her.

(7) On July 13, 2013, Hajali's son called Meliodon to tell him that someone was trespassing on the rental property. Meliodon told him to call the police. Hajali also contacted the police about the trespasser. The trespasser was identified as a former tenant.

(8) Officer Daller, a New Castle County police officer, and his supervising officer responded to the trespassing calls. According to Officer Daller, there was a woman on the property who identified herself as a tenant. Officer Daller learned that there was outstanding rent and property had been taken from the house. There

was no paperwork showing that the woman was the tenant or that she had been evicted.

(9)     Officer Daller spoke to Hajali's son who referred him to Meliodon. Officer Daller testified that Meliodon told him the woman on the property was a former tenant, he and Hajali had taken property from the house that was worth approximately the amount of rent owed (more than $10,000.00), and the property would not be returned until the tenants paid the rent. Meliodon testified that he told Officer Daller that he took the televisions for safekeeping. Officer Daller said he told Meliodon that was theft.

(10)     After speaking with his supervisor and the tenant, Officer Daller decided to see if the parties could resolve the dispute. He called Meliodon again and gave him a couple of days to work things out and return the property. According to Officer Daller, Meliodon stated that he would not return the property, at least not until Hajali returned to the country, and a lawyer said they could take the property. Meliodon testified that Officer Daller told him to return the televisions and Meliodon said he would.

(11)     After a couple of days, Officer Daller learned from the tenant that Meliodon was still refusing to return the property. Officer Daller testified that he left a voice mail for Meliodon, who lived in Pennsylvania, informing him that he was going to prepare an arrest warrant for him and Hajali. Officer Daller drafted an

4

affidavit of probable cause for Theft Over $1,500.00 and Conspiracy. In the affidavit, Officer Daller stated that Meliodon told him that he and Hajali had removed electronic devices and clothing from the house because the tenants owned approximately $10,000.00 in back rent and expenses for the property. A Justice of the Peace Court magistrate issued arrest warrants for Hajali and Meliodon.

(12) Both Officer Daller and Meliodon testified that Officer Daller left Meliodon a voice mail notifying him that there was a warrant for his arrest. Meliodon contacted Hajali's lawyer, who told him not to worry about it and that they could resolve it when the Hajali returned to the United States. Officer Daller tried to execute the warrant at Hajali's Delaware residence several times. Hajali's son told Officer Daller that Hajali was in Morocco. Hajali contacted her lawyer about the warrant. He gave her the same advice he gave Meliodon, that they would deal with it when she returned to the United States. On July 18, 2013, Hajali's lawyer filed a complaint for rent and possession in the Justice of the Peace Court.

(13) On Friday, August 2, 2013, Hajali returned to the United States at JFK Airport. She was taken into custody on the outstanding warrant and incarcerated at Rikers Island. During her incarceration, Hajali was very frightened and upset. After contacting the police in Delaware and New York and a Delaware prosecutor, Hajali's attorney emailed the Attorney General and others at the Attorney General's office on August 4, 2013 about the situation. On August 5, 2013, the Attorney

General asked that a *nolle prosequi* be entered on the charges against Hajali. A *nolle prosequi* was entered on all of the charges against Hajali. The charges against Meliodon were also dismissed.

(14) Hajali was released from Rikers Island late on August 6, 2013. On August 26, 2013, the Justice of the Peace Court ordered the tenants to pay Hajali $14,420.00 in rent and Hajali to return the televisions to the tenants. Hajali filed a complaint against Officer Daller with the New Castle County Police Department. After an investigation, Officer Daller was disciplined (a four-hour suspension) for incomplete investigation.

(15) After her arrest, Hajali had trouble sleeping and cried frequently. Hajali's medical expert witness testified that Hajali suffered from post-traumatic stress disorder as a result of her arrest and incarceration. This witness also testified that Hajali would need medication for the rest of her life and therapy once or twice a week for at least two years. Officer Daller's medical expert witness testified that Hajali did not meet the criteria for a diagnosis of post-traumatic stress disorder, but did meet the criteria for an adjustment-like disorder that could be treated with an increase in the dosage of medicine she was already taking and one year of therapy.

(16) Hajali also called an expert witness, a former Wilmington Chief of Police, who testified that Officer Daller made a number of mistakes. These mistakes included pursuing the matter as a criminal case after properly classifying it as a civil

6

matter, taking a theft report in response to a criminal trespass complaint, and stating in his report that he was going to consult with the Attorney General about how to handle the matter, but failing to do so. Officer Daller's expert witness, a Chief of Police in Mississippi, testified that Officer Daller acted properly.

(17) During trial, Officer Daller moved for a directed verdict. The Superior Court held that he was entitled to a verdict in his favor on the first count of the complaint (fabrication of evidence in violation of the Fourth and Fourteenth Amendments). Officer Daller also moved for a mistrial based on two comments Hajali's counsel made about the falseness of certain testimony and evidence and Hajali's recurring commentary, despite the Superior Court's repeated admonishments, on whether witnesses were telling the truth or not. The Superior Court took the motion under advisement. The jury found in favor of Officer Daller.

(18) Officer Daller filed a motion for costs and fees, which the Superior Court granted in part. The Superior Court awarded $3,431.45 of the $26,625.96 in fees and costs sought by Officer Daller.[2] Hajali filed a *pro se* motion for new trial, which the Superior Court denied. This appeal followed.

(19) After the completion of briefing and the submission of this matter for decision on the briefs, Hajali filed a motion for leave to file an amended brief. She sought permission to include additional evidence and to raise more arguments.

---

[2] *Hajali*, 2017 WL 5606828, at *4.

Hajali was granted multiple extensions to file her opening brief and an extension to file her reply brief. She has not shown why she could not include the additional evidence and arguments in her opening brief. Hajali's motion for leave to file an amended brief is therefore denied.

(20) Hajali's arguments on appeal may be summarized as follows: (i) the jury's verdict was wrong; (ii) juror misconduct; (iii) Officer Daller's counsel mischaracterized the Justice of the Peace Court's judgment; (iii) Officer Daller and his supervisor were disciplined; and (v) her trial counsel and her lawyer in the landlord-tenant dispute provided unsatisfactory legal representation. Hajali's arguments are without merit.[3]

(21) We construe Hajali's contentions regarding the jury verdict as an argument that the Superior Court erred in denying her motion for a new trial. The Court reviews the denial of a motion for a new trial for abuse of discretion.[4] "We will find an abuse of discretion 'if the jury verdict was against the great weight of evidence, no reasonable jury could have reached the result, and the denial was untenable and unreasonable.'"[5]

---

[3] We have considered these arguments, even though the State correctly points out that Hajali's notice of appeal only attached the Superior Court order on the motion for costs and that Hajali's opening brief was late. A pro se litigant's filings may be held to somewhat less stringent standards than filings prepared by a lawyer. *Brooks v. HAC Home Loans Servicing, L.P.*, 2012 WL 3637238, at *2 (Del. Aug. 23, 2012).

[4] *Young v. Frase*, 702 A.2d 1234, 1236 (Del. 1997).

[5] *Estate of Rae v. Murphy*, 956 A.2d 1266, 1272 (Del. 2008) (quoting *Wilhelm v. Ryan*, 903 A.2d 745, 755 (Del. 2006)).

(22)  In denying Hajali's motion for a new trial, the Superior Court noted that Hajali made many conclusory claims, i.e., the judge's rulings were erroneous and the verdict was against the weight of the evidence, without identifying any facts or authority in support of these claims.[6]  Hajali did include some facts regarding her juror misconduct claim.  On the last day of trial, Hajali's counsel informed the Superior Court that Hajali believed she saw one of the jurors having lunch with a New Castle County attorney in the courtroom.  The Superior Court questioned the juror, who stated that he did not recognize the person or have lunch with them.  The attorney also denied knowing the juror or having lunch with the juror.  This record does not support a new trial on the grounds of juror misconduct.  The fact that the juror was an attorney, as Hajali argues on appeal, does not change this result.

(23)  Hajali also emphasizes that, after the juror and attorney were questioned, the Superior Court warned her attorneys that she would go to prison if she said anything when she returned to the courtroom and reduced the time for her attorneys' closing arguments because of her behavior.  Hajali omits that immediately after the judge warned her attorneys, he stated "[y]ou know I won't put her in prison, tell her that the Judge will make you leave….I don't want to cause a heart attack but that would be the fourth or fifth time she's disregarded my instructions."[7]  The

---

[6] *Hajali*, 2017 WL 5593516, at *2.
[7] Appendix to Appellee's Answering Brief at B140-41.

Superior Court made this warning after Hajali had disregarded previous admonishments not to make audible comments on the veracity of witnesses' testimony. Officer Daller sought a mistrial based on Hajali's behavior. Given Hajali's repeated inability to control her comments, the Superior Court did not act unreasonably in warning her of the potential consequences.

(24) As to the reduction in time for closing arguments, the Superior Court expressed concern the previous day that both sides' attorneys were making it difficult to try the case within the five-day availability of the jury. Without objection, the Superior Court allocated 60 minutes of the 90 minutes for closing to Hajali (45 minutes for closing and 15 minutes for rebuttal) and 30 minutes to Officer Daller. The Superior Court reduced the 45 minutes to 40 minutes because of Hajali's actions. Hajali's counsel did not object to the reduction and said "fair is fair."[8] Even if Hajali had not waived any objection to the reduction in time, the Superior Court did not abuse its discretion in regulating the presentation of evidence and argument at trial.[9]

(25) Based upon the trial record in this case, a reasonable jury could have found in favor of Officer Daller. Hajali had to show, among other things, that Officer

---

[8] *Id.* at B141.

[9] *See, e.g., Smith v. State*, 560 A.2d 1004, 1007 (Del. 1989) ("[W]e we acknowledge that trial judges possess wide discretion in deciding the admissibility and the manner of presentation of evidence before the court and jury.").

Daller knowingly or with reckless disregard to the truth made false statements or omissions in the arrest warrant or that he was liable under the torts claims act for wanton negligence or willful and malicious intent. Witness credibility, especially that of Meliodon and Officer Daller on the subject of their July 13, 2013 conversations, was a key aspect of this case. "It is the exclusive province of the jury to make credibility determinations and to resolve conflicts in the testimony."[10] A reasonable jury could have found Officer Daller more credible than Meliodon and entered a verdict in Officer Daller's favor. This verdict was not against the great weight of the evidence. Having carefully considered the parties' positions on appeal, including the trial transcripts, the Court concludes that the Superior Court did not abuse its discretion in denying Hajali's motion for a new trial.

(26) Hajali next argues that Officer Daller's counsel misled the jury into believing that she lost the Justice of the Peace Court case by only offering the portion of the Justice of the Peace Court order that required her to return the televisions. Contrary to Hajali's contentions, the entire order, which included the Justice of the Peace Court's ruling that the tenants owed $14,4200.00 in rent, was admitted into evidence. Officer Daller's counsel focused on the portion relating to the return of

---

[10] *Dunn v. Riley*, 864 A.2d 905, 907 (Del. 2004).

the televisions, but the entire order was available to the jury and Hajali's counsel could have drawn the jury's attention to other portions of the order.[11]

(27) As to Hajali's assertion that Officer Daller was disciplined, she is correct. The jury was informed of that discipline. Hajali cites no authority, however, to support the proposition that the imposition of discipline meant Hajali was entitled to a jury verdict in her favor. Finally, to the extent Hajali asserts malpractice claims against her former attorneys, those claims are not cognizable in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[11] Counsel may not have done so because of the Justice of the Peace Court's rulings that Hajali gave the tenants insufficient notice, which meant the lease ended on July 30, 2013, and that the locks should not have been changed in June.