# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| THE STATE OF DELAWARE,<br>                Plaintiff,<br>        *ex. rel.*<br><br>WILLIAM SEAN FRENCH,<br>         Plaintiff-Relator,<br>   v.<br><br>OVERSTOCK.COM, INC.,<br>           Defendant. | )<br>)<br>)<br>)<br>)<br>) C.A. No. N13C-06-289 PRW CCLD<br>)<br>)<br>)<br>)<br>)<br>) |

Submitted: March 21, 2019
Decided:  June 28, 2019

## ORDER FOR ENTRY OF FINAL JUDGMENT UNDER SUPERIOR COURT CIVIL RULE 54(b) FOR DAMAGES AND PENALTIES

Upon consideration of the Motion for Entry of Final Judgment Under Superior Court Civil Rule 54(b) (the "Motion") filed by the State of Delaware and Plaintiff-Relator William Sean French ("Plaintiffs") (D.I. 988); the Post-Verdict Memorandum of Law on Plaintiffs' Remedies (the "Remedies Memorandum") filed by Defendant Overstock.com, Inc. ("Overstock") (D.I. 991); Overstock's Response in Opposition to Plaintiffs' Request for Attorneys' Fees and Costs (the "Opposition") (D.I. 992); the oral arguments presented by the parties on the Motion, the Remedies Memorandum and the Opposition (D.I. 1016); the supplemental letters filed by the Plaintiffs and Overstock (D.I. 1018; D.I. 1019); and the complete record of this proceeding:

(1)    After a six-day trial in September, 2018, a jury found Overstock to have

knowingly violated the Delaware False Claims and Reporting Act ("DFCRA") by failing to report and remit dormant gift card balances to the State of Delaware. The total amount of the jury verdict was $2,953,826.40 for violations of the DFCRA in 2010, 2011, 2012 and 2013. Prior to submission to the jury, the parties stipulated that any potential damages judgment would be reduced by 18% to reflect the maximum cost of goods sold as permitted by the DFCRA. That reduces the verdict to $2,422,137.65.

(2)    Post-verdict, Plaintiffs filed their Motion requesting that the Court enter judgment in the amount of $10,846,294.77, consisting of: (a) civil penalties in the amount of $44,000; (b) treble damages in the amount of $7,266,412.94; (c) attorneys' fees in the amount of $2,756,225.60[1]; and (d) costs in the amount of $779,656.23.

(3)    Overstock filed its Remedies Memorandum proposing: (a) civil penalties in the amount of $22,000; (b) a reduction to the treble damages requested by Plaintiffs; and (c) an award of attorneys' fees calculated via the lodestar method.[2]

(4)    Overstock then filed its Opposition more directly addressing Plaintiffs'

---

[1]    Plaintiffs calculated attorneys' fees employing the common fund doctrine.

[2]    "The lodestar method multiplies hours reasonably expended against a reasonable hourly rate to produce a 'lodestar,' which can then be adjusted through application of a 'multiplier,' to account for additional factors such as the contingent nature of the case and the quality of the attorney's work." *Americas Mining Corp. v. Theriault*, 51 A.3d 1213, 1253 (Del. 2012).

request for attorneys' fees and costs in the amount of $3,535,881.83. According to Overstock, Plaintiffs failed in their submission to demonstrate that the specific fees and costs claimed are reasonable or reasonably related to Plaintiffs' claims against Overstock and the Court should simply reject their request. If not, Overstock says, the Court should at least reduce said amount via calculation using the relevant factors set out in 6 *Del. C.* §1205(a).

(5)     Section 1205(a)—DFCRA's damages and penalties provision—reads:

> Any person who . . . [k]knowingly makes, uses, or causes to be made or used a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money to the Government shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of damages which the Government sustained because of the act of that person.[3]

(6)     DFCRA's §1205(a) further requires a violator to pay "the costs of a civil action brought to recover any such penalty or damages, including payment of reasonable attorneys' fees and costs."[4]  With respect to the determination of

---

[3]     DEL. CODE. ANN. tit. 6, § 1205(a) (2009). The 2009 version of the DFCRA is applicable to this case. *See, e.g., State ex rel. French v. Card Compliant LLC,* 2018 WL 4183714, at *2 n.7 (Del. Super. Ct. Apr. 30, 2018) ("All parties agreed that the version of the DFCRA's Administrative Proceedings Bar extant from June 30, 2000, to July 23, 2013, was applicable here.").

[4]     *Id.*

reasonable attorneys' fees and costs, the statute provides:

> [T]he court shall consider, without limitation, whether such fees and costs were necessary to the prosecution of the action, were incurred for activities which were duplicative of the activities of the Department of Justice in prosecuting the case, or were repetitious, irrelevant or for purposes of harassment, or caused the defendant undue burden or unnecessary expense.[5]

(7)    So, as the prevailing party, Plaintiffs are entitled to an award comprised of civil monetary penalties, treble damages, and reasonable attorneys' fees and costs under §1205(a).

### *The Court Will Enter A Final Judgement on Penalties and Damages*

(8)    Superior Court Civil Rule 54(b) allows the Court to "direct the entry of a final judgment upon one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay . . . ."[6]

(9)    In deciding whether there is "just reason for delay," the Court must consider: "(1) the hardship or injustice suffered by the moving party in the absence of the final judgment; and (2) the interest of judicial administration and judicial economy."[7] This decision is left to the discretion of the Court; however, the long-

---

[5]    *Id.*

[6]    Super. Ct. Civ. R. 54(b).

[7]    *Lima Delta Co. v. Glob. Aerospace, Inc.*, 2016 WL 1169125, at *2 (Del. Super. Ct. Mar. 17, 2016).

established policy against piecemeal appeals requires this Court to exercise that discretion "sparingly," "cautiously," and "frugally."[8]

(10)    The Court finds that there is no just reason for delay in entering final judgment in this case with respect to the award for penalties and treble damages while the Court resolves the remaining issues regarding attorneys' fees and costs. Plaintiffs have articulated concerns regarding their ability to collect on any judgment against Overstock due to the reported impending sale of the company. The Court finds that if such a sale rendered Plaintiffs unable to collect its damage award, hardship and injustice would be suffered. This is especially true given the fact that Plaintiffs began litigating the issues in this suit in 2013.

(11)    In resolving the amount of the verdict and damage award, the Court has considered Overstock's arguments that, in its view, the amount of the trebled damages "is both inappropriate and excessive."

### *Sufficient Evidence Supported the Jury's Verdict on Damages.*

(12)    The Court is unpersuaded by Overstock's post-verdict claims of insufficient evidence to support the jury's damages finding here. The Court continues to abide by its rulings made when it admitted the evidence from which this figure was derived. As the jury was properly instructed, the damages derived from

---

[8]    *See Lima Delta Co.*, 2016 WL 1169125, at \*2; *In re Tri-Star Pictures, Inc., Litig.*, 1989 WL 112740, at \*1160 (Del. Ch. Sept. 26, 1989).

Overstock's DFCRA violations need not be established by Plaintiffs "with mathematical precision, but the law does not permit recovery of damages based only on speculation or conjecture. Rather, there must be a reasonable basis for determining the damages that are alleged here—that is, the unredeemed gift card values that Overstock had an obligation to report and transmit under Delaware's Unclaimed Property Law."[9]

(13) That instruction and the jury's verdict are consistent with a reasonable view of the facts and Delaware law. Plaintiffs were required to prove their damages by a preponderance of the evidence.[10] Delaware does not "require certainty in the award of damages where a wrong has been proven and injury established."[11] Indeed, "[t]he quantum of proof required to establish the amount of damage is not as great as that required to establish the fact of damage."[12] Responsible estimates of damages that lack mathematical certainty are permissible so long as the fact finder had a basis

---

[9] Charge to the Jury, *State ex rel. French v. Overstock*, C.A. No. N13C-06-289 PRW CCLD, at 14 (Del. Super. Ct. Sept. 20, 2018) (D.I. 982).

[10] Charge to the Jury, at 14 ("Under Delaware law, Plaintiffs may only recover damages that have be proven by a preponderance of the evidence.").

[11] *Del. Express Shuttle, Inc. v. Older*, 2002 WL 31458243, at *15 (Del. Ch. Oct. 23, 2002) (quoting *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods., Inc.*, 1992 WL 251380, at *7 (Del. Ch. Sept. 29, 1992)).

[12] *Total Care Physicians, P.A. v. O'Hara*, 2003 WL 21733023, at *3 (Del. Super. Ct. July 10, 2003).

to make such a responsible estimate.[13]   Here the jury did—Overstock's own reporting to Card Compliant.   To the extent Overstock says those records were unreliable or not fully understood, Overstock was free to and did present its counter evidence to the jury.   Unfortunately for Overstock, the jury did not accept its self-serving, after-the-fact accounting of what should have been reported, what was redeemed, or what should have been transmitted.

(14)   Public policy has led Delaware and other courts to show a general willingness to make a wrongdoer "bear the risk of uncertainty of a damages calculation where the calculation cannot be mathematically proven."[14]   And when the extent of damages is made more difficult to ascertain by the nature of the wrongful act itself, it would be "a perversion of fundamental principles of justice" to deny reasonable and adequate relief to the injured and relieve the wrongdoer from making adequate amend for his act.[15]   Given the totality of the trial record, the Court

---

[13]     *Beard Research, Inc. v. Kates*, 8 A.3d 573, 613 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010).

[14]     *See, e.g., Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 556 (1931) ("[W]hatever uncertainty there may be in this mode of estimating damages is an uncertainty caused by the defendants' own wrongful act; and justice and sound public policy alike require that he should bear the risk of the uncertainty thus produced."); *Boyce v. Soundview Tech. Gp., Inc.*, 464 F.3d 376, 391 (2d Cir. 2006) ("[W]here the existence of damage is certain, and the only uncertainty is as to its amount . . . the burden of uncertainty as to the amount of damage is upon the wrongdoer."); *Great Am. Opportunities*, Inc. *v. Cherrydale Fundraising, LLC*, 2010 WL 338219, at *23 (Del. Ch. Jan. 29, 2010) ("[P]ublic policy suggests that the wrongdoer should be required to "bear the risk of uncertainty of a damages calculation where the calculation cannot be mathematically proven.").

[15]     *Total Care Physicians, P.A.*, 2003 WL 21733023, at *3.

simply cannot agree with Overstock. The Court need only assure itself that when setting damages the jury did not overlook some lack of Plaintiffs' proof on the issue and "supply the omission by speculation or conjecture."[16] A review of the entire trial record supports the jury's finding here was based on evidence, not speculation.

(15) Our Supreme Court has been very clear: "Under Delaware law, enormous deference is given to jury verdicts" on damages.[17] The same principles applied in other post-verdict challenges to damage verdicts (*e.g.* Additur and Remittitur) guide the Court here. "[A]s a practical test, a court presented with a request [to substitute its own judgment for the jury's] must review the record and determine whether the jury's award of damages is within a range supported by the evidence."[18] Here, the Court has. And "[a]s long as there is a sufficient evidentiary basis for the amount of the award, the jury's verdict should not be disturbed."[19] Here, there is; so this jury's verdict will not be.

---

[16] *Henne v. Balick,* 146 A.2d 394, 396 (Del.1958). *See Pioneer Hi-Bred Int'l v. Holden Found. Seeds,* 35 F.3d 1226, 1245 (8th Cir. 1994) ("If it is speculative and uncertain whether damages have been sustained, recovery is denied. But if the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated."

[17] *Wilhelm v. Ryan,* 903 A.2d 745, 754 (Del. 2006) (quoting *Young v. Frase,* 702 A.2d 1234, 1236 (Del. 1997)).

[18] *Id.* at 1237.

[19] *Id.*

### _Statutorily Mandated Treble Damages Are Not Excessive_

(16)    DFCRA's §1205(a) provides that a false claims violator "shall be liable to the Government for . . . 3 times the amount of damages which the Government sustained because of the act of that person."[20]    The parties agree that were jury's adjusted damages award trebled, the result would be $7,266,412.94.  Such an award of damages, Overstock says, is unconstitutional under the Excessive Fines Clauses of the Eighth Amendment of the United States Constitution and Article I, § 11 of Delaware Constitution.   While the award is substantial, this Court cannot say that it is unconstitutional.

(17)  No doubt, the Eighth Amendment's Excessive Fines Clause is an incorporated protection applicable to the States under the Fourteenth Amendment's Due Process Clause.[21]  No doubt, any examination of the merits of Overstock's excessiveness claim under either the Delaware or Federal Constitution would be guided by the same principles and case law because the protections under Article I, Section 11 are generally viewed as coextensive with the Eighth Amendment protections.[22] And, no doubt, because treble damages provisions in false

---

[20]    DEL. CODE. ANN. tit. 6, (2009).

[21]    _Timbs v. Indiana,_ 139 S.Ct. 682, 689 (2009).

[22]    _See Sanders v. State,_ 585 A.2d 117, 144 (Del. 1990); _State v. Cannon,_ 190 A.2d 514, 515 (Del. 1963).

claims Acts certainly have a punitive element, they have been subject to Excessive Fines analyses under the Eighth Amendment.[23]

(18) "Protection against excessive punitive economic sanctions secured by the Clause is . . . both 'fundamental to our scheme of ordered liberty' and 'deeply rooted in this Nation's history and tradition.'"[24] But, while the Court may rightly take a skeptical view when scrutinizing fines,[25] it still "accord[s] substantial deference to the judgment of the General Assembly" which under our system of government "ha[s] broad initial authority to determine the appropriate penalties" for wrongdoing.[26]

(19) True enough, DFCRA's treble damages provision is meant to deter and punish actual financial wrongdoing that specifically harms the State. But that provison also has "a compensatory side, serving remedial purposes in addition to punitive objectives."[27] As United States Supreme Court observed: "There is no question that some liability beyond the amount of the fraud is usually necessary to

---

[23]    *United States ex. rel. Drakeford v. Tuomey,* 792 F.3d 364, 387 (4th Cir. 2015); *United States v. Mackby,* 261 F.3d 821, 831 (9th Cir. 2001).

[24]    *Timbs,* 139 S.Ct. at 689 (quoting *McDonald v. City of Wilmington,* 561 U.S. 742, 767 (2010)).

[25]    *Id.*

[26]    *See Sanders,* 585 A.2d at 144.

[27]    *Cook County, Illinois v. United States,* 538 U.S. 119, 130 (2003).

-10-

compensate the Government completely for the costs, delays, and inconveniences occasioned by fraudulent claims."[28] Moreover, the injury occasioned by any false claims violation is "not merely the amount of the fraud itself, but also ancillary costs, such as the costs of detection and investigation, that routinely attend the Government's efforts to root out deceptive practices directed at the public purse."[29] And this includes those occasioned by reverse false claims like those here.[30]

(20)  In this case, Overstock was found to have engaged in not just a single violative act or omission under DFCRA; Overstock's was a years-long pattern of activity.  And while Overstock may give short shrift to the economic impact of its false claims violations, wrongfully withholding millions from escheatment deprived all Delaware citizens the opportunity to derive the benefits from the funds it retained. The trial evidence convincingly demonstrated that Overstock did this not for the rightful owners of its unredeemed gift cards, but for its own economic gain.

(21)  When considering all of the evidence, and the considerations of compensation, punishment, and deterrence that underlie DFRCA's treble damages provision, the Court finds the trebled damage amount of $7,266,412.94 is not grossly

---

[28]   *Id.* (internal quotations omitted).

[29]   *United States v. Halper,* 490 U.S. 435, 445 (1989).

[30]   *See, e.g., United States v. Bourseau,* 2006 WL 3949169 (S.C. Cal. Dec. 1, 2006).

disproportionate to Overstock's level of culpability and the harm it caused.[31]

### *Lodestar Method Should Be Used to Calculate Attorneys' Fees and Costs*

(22) With respect to attorneys' fees and costs, the Court finds that the "lodestar method" is the proper method for calculating an award of attorneys' fees and costs under the DFCRA.

(23) As mentioned before, DFCRA's §1205(a) requires a violator to pay "the costs of a civil action brought to recover any such penalty or damages, including payment of reasonable attorneys' fees and costs." Lodestar has become the most oft-used method for determining reasonable attorneys' fees in cases involving fee-shifting statutes. And the method is particularly appropriate for use in cases where the fee awards are meant "to compensate individuals whose actions in commencing, pursuing or settling litigation, even if taken solely in their own name and for their own interest, benefit a class of persons not participating in the litigation."[32] Perhaps that is why it has "achieved dominance in the federal courts."[33] As observed by the United States Supreme Court, although "imperfect," the lodestar method "has

---

[31] *United States v. Bajakajian,* 524 U.S. 321, 334 (1998) (Monetary sanctions violate the Excessive Fines Clause when they are "grossly disproportional to the gravity of a defendant's offense.").

[32] *Lindy Bros. Builder, Inc. v. Am. Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 165 (3d Cir.1973).

[33] *Gisbrecht v. Barnhart,* 535 U.S. 789, 801 (2002).

-12-

several important virtues": (1) it "produces an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case"; (2) it is readily administrable; and (3) the lodestar calculation is "objective," thereby cabining a trial judge's discretion, permitting meaningful judicial review, and producing reasonably predictable results.[34] Certainly, the lodestar method is not well-suited for all fee award situations.[35] "As this Court has observed earlier, case law on the federal False Claims Act, the DFCRA's federal analogue, is informative when interpreting our state false claims statute."[36] And lodestar, for good reason, has been readily accepted for use in federal False Claims Act cases.[37]

(24) The Court hereby directs the parties to confer on a method for and the scheduling of submission of Plaintiffs' evidence—to the Court and Overstock—that

---

[34] *Perdue v. Kenny A. ex rel Winn,* 559 U.S. 542, 551-52 (2010).

[35] *E.g., Americas Mining Corp.,* 51 A.3d 1213, 1254 (Del. 2012) (Delaware Supreme Court notes that for common fund fee awards "[i]n particular, we explicitly disapproved the Third Circuit's 'lodestar method.'").

[36] *State ex rel. French v. Card Compliant LLC, et. al.,* 2018 WL 4183714, *5 & n.33 (Del. Super. Ct. Apr. 30, 2018).

[37] *See, e.g., United States ex. rel. Vuwuru v. Jadhav,* 555 F.3d 337, 356–57 (4th Cir. 2009); *United States ex rel. Washington v. Morad,* 2017 WL 1250912, at *3 (E.D. La. Apr. 5, 2017) ("Though the Fifth Circuit has not directly addressed what standard to use to determine reasonable attorneys' fees in qui tam False Claims Act cases, other circuits and other district courts in this Circuit have used the lodestar method."); *Gonter v. Hunt Valve Co., Inc.,* 510 F.3d 610, 616 (6th Cir. 2007); *United States v. Everglades College, Inc.,* 855 F.3d 1279, 1292-93 (11th Cir. 2017).

-13-

supports Plaintiffs' requested fees and costs. That evidence should include detailed records distinguishing between time and money spent on Plaintiffs' case against Overstock and its case against other, former co-defendants.[38]

(25) The Court retains jurisdiction over this matter to determine the extent of Plaintiffs' attorneys' fees and costs.[39] The Court will enter judgment with respect to attorneys' fees and costs after its review of the evidence provided by Plaintiffs.

The Court, having considered each party's submissions, HEREBY ORDERS that Judgment is entered in favor of Plaintiffs and against Overstock as follows:

(1) Civil penalties of $5,500.00 per violation for years 2010, 2011, 2012 and 2013 for a total penalty award of $22,000.00; and

(2) Treble damages in the amount of $7,266,412.94.

Post-judgment interest shall be stayed pending final judgment on the remaining fees and costs issues; it shall then accrue at the statutory rate from the date

---

[38] This lodestar approach requires that the Court first calculate the number of documented hours reasonably expended by Plaintiffs' attorneys. The Court excludes from that calculation hours that are excessive, redundant, or otherwise unnecessary. The Court must then determine a reasonable hourly rate or rates for the allowed hours, a determination that is often benchmarked to the prevailing rates in the community for lawyers of like qualifications, experience, and competence. The resulting numbers are multiplied to yield the lodestar amount, which the Court may then adjust based on other factors. The Court will employ methods and standards accepted by the federal and Delaware courts. *See, e.g., Perdue v. Kenny A. ex rel Winn,* 559 U.S. 542, 551-52 (2010); *Immedient Corp. v. Health Trio, Inc.,* 2007 WL 656901, at *3 (Del. Super. Ct. Mar. 5, 2007).

[39] *E.g., NRG Barriers, Inc., v. Jelin,* 1996 WL 473281 (Del. Ch. Aug. 12, 1996) (Court of Chancery after entering final judgment on all other claims and issues under Rule 54(b), retained jurisdiction to determine the extent of attorneys' fees and costs).

-14-

of the Final Order of Judgment and until the Judgment is paid in full.

**IT IS SO ORDERED** this 28[h] day of June, 2019.

**Paul R. Wallace, Judge**

Original to Prothonotary

cc: Counsel via File and Serve